RAJ B. LAL, Plaintiff-Appellant, v. PAUL NAFFAH *et al.*, Defendants-Appellees.

First District (5th Division)   No. 85—2009

Opinion filed November 7, 1986.

Leoris & Cohen, of Highland Park (Richard J. Friedman, of counsel), for appellant.

Rivkin, Radler, Dunne & Bayh, of Chicago (Irving B. Levinson and Matthew W. Cockrell, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff filed a two-count complaint against defendant physician, individually, and defendant's medical corporation to recover additional compensation for services rendered under the terms of an alleged oral agreement defining the parties' professional association. Count I of the complaint, brought pursuant to a breach-of-contract theory, sought as relief a redetermination of the income earned by plaintiff while employed with defendant medical corporation. Count II alleged fraudulent misrepresentation on the part of defendant physician with regards to plaintiff's future compensation. This appeal is from an order of the trial court granting defendants' motion for summary judgment as to Count I of plaintiff's amended complaint.

We affirm.

In July 1973 plaintiff, Dr. Raj B. Lal (Lal), and defendant Dr. Paul Naffah (Naffah), formed a professional association pursuant to the terms of a written contract set to expire in December of 1974. Prior to executing the contract, Lal had proposed that his salary include a percentage tied to the profits of Naffah's practice. The document ultimately signed and agreed to by both parties, however, failed to include any such provision.

Seeing that their contract was soon about to expire, the two physicians met briefly sometime in December 1974 to discuss the future of their association. During the course of their conversation, Lal once again asked to share in the profits of Naffah's practice. In January 1975, Lal was presented with a written employment contract which provided, among other things, that future compensation be tied, not to the profits of the practice, but to Naffah's salary. Unhappy with this provision, Lal never signed the aforementioned document and no

further discussions were held between the parties on the matter.

Lal's failure to sign the proposed agreement or to submit a counteroffer did not, however, cause him to terminate his professional association with Naffah. For the next five years, Lal not only continued to work for Naffah, but was also given, as full compensation for his services, 117 semi-monthly checks drawn on the defendant corporation's account. Accompanying each check was a written statement indicating the net proceeds of Lal's gross compensation after reduction for Federal and State income tax, as well as FICA employee tax withholdings. At the beginning of each year, Naffah made known to Lal what his regular salary would be for the next 12 months. For the entire term of his employment with Naffah's corporation, Lal was paid the exact amount as represented to him at the beginning of each year. In addition to his regular salary, Lal would from time to time receive bonuses, bringing the amount of monies collected by him during the five-year period to a total in excess of $870,000. At no time did Lal ever object to his salary or bonuses. Instead, he accepted and cashed each of the 117 paychecks without a word of protest or reservation that they represented an improper amount of compensation.

It was not until the fifth year of their association that Lal allegedly first began to suspect that his salary was not, after all, related to the overall profits of the practice, but rather reflected a percentage tied to Naffah's salary. Anxious to prove his suspicion right, Lal demanded on numerous occasions to see the business' financial records, only to encounter Naffah's refusal. The failure to reach a compromise after making repeated attempts to settle their differences eventually led the parties to part ways and terminate their professional association.

Following a dismissal of his original complaint, Lal filed a two-count amended complaint based on a breach-of-contract theory and on fraudulent misrepresentation. This appeal stems from the trial court's granting of Naffah's motion for summary judgment as to count I of Lal's amended complaint. Count I alleged, *inter alia*, that Naffah orally agreed, during the parties' December 1974 meeting, to employ Lal for a minimum of five years during which time he would be paid a percentage tied to the profits of Naffah's practice. As basis for his motion for summary judgment, Naffah contended that (1) no oral agreement was ever reached at the December meeting fixing Lal's compensation at a percentage of the practice's profits; and (2) even if there was such an oral agreement, its enforcement would be effectively barred by the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1 *et seq.*) and the doctrines of estoppel, waiver, and accord and

satisfaction.

By granting defendant Naffah's motion without written opinion, the trial judge failed to indicate the grounds for his ruling. In an apparent attempt to demonstrate that the trial judge had based his ruling solely on the Statute of Frauds, Lal moved and was granted leave by this court to add a bystander's report of proceedings to the record on appeal. Naffah maintained that the trial judge had struck the proposed language that would have indicated that the Statute of Frauds was the sole ground for his ruling, thus lending support to the validity of the remaining issues.

Lal next filed his original brief on appeal, challenging therein only the issues pertaining to the Statute of Frauds and whether an oral agreement had been reached by the parties at the December meeting. Naffah argued that Lal's failure to discuss the estoppel/waiver and accord/satisfaction doctrines caused these issues to remain unchallenged for affirmance on appeal. After Lal subsequently sought to address these two issues in his reply brief, Naffah moved to strike on the basis that his failure to appeal these grounds earlier had acted as a waiver on his right to do the same at this point in the appellate proceedings. This court denied Naffah's motion to strike and granted him instead leave to answer Lal's reply.

Opinion

Whether the trial court properly granted defendants summary judgment is the sole issue on appeal.

■ We first consider Lal's contention that a genuine issue of material fact exists regarding the terms of the oral agreement reached by the parties. An essential element for the formation of a contract is the manifestation of agreement or mutual assent by the parties to the terms thereof. (*Allen v. Amber Manor Apartments Partnership* (1981), 95 Ill. App. 3d 541, 420 N.E.2d 440.) A person may thus not be subjected to contractual obligations unless the obligation is clearly fixed by an express or implied agreement. (*Cohen v. Washington Manufacturing Co.* (1979), 80 Ill. App. 3d 1, 398 N.E.2d 1202.) In *Vandevier v. Mulay Plastics, Inc.* (1985), 135 Ill. App. 3d 787, 791, 482 N.E.2d 377, 380, this court held:

"[In a breach of contract action] [p]laintiff shoulders the burden of proving every material term of the contract. [Citation.] It is well established that in order for an oral contract to be binding and enforceable, its terms must be definite and certain. [Citation.] Where it appears that the language used or the terms proposed are understood differently by the parties, there is no

meeting of the minds and no contract exists between the parties. [Citations.]''

A review of the record in the instant case reveals that the parties did not ever reach an oral agreement fixing Lal's compensation at a percentage of the profits. Naffah first refused Lal's request for a share of the practice's profits in the summer of 1973. This is apparent from the fact that the written contract presented to Lal following the parties' preliminary discussions failed to include such provisions. Lal nonetheless proceeded to sign the document, and the contract was carried to full term until its expiration in December 1974. When the parties met on December 20, 1974, to discuss the future of their association, Lal again requested that he be given a percentage of the profits. The written contract presented to Lal as a follow-up to this meeting, however, omitted the terms which allegedly were part of the oral agreement. Nevertheless, Lal continued to work for Naffah collecting salary and bonuses in excess of $870,000. Lal argues that he assumed that the monies paid him during the next five years were tied to the profits of Naffah's practice as (1) Naffah had orally agreed during their meeting in December 1974 to hire him for that period of time and compensate him in the aforementioned manner; (2) he never signed the written contract presented to him in January 1975 thus assuring that the terms of the oral agreement were the ones controlling the manner of his future compensation; and (3) Naffah had assured him that his salary was tied to the percentage agreed upon, which, for the reasons already stated, could only mean that he would share in the profits of Naffah's practice.

■ We find Lal's arguments to lack merit for a number of reasons. First, it is highly unlikely that Lal, when presented with the written contract in January 1975 failing to make mention that his compensation would be tied to a percentage of the practice, did not comprehend that Naffah had, at that point in time, a different understanding of what his compensation should be. The fact that Lal refused to sign the January 1975 contract and subsequently failed to make a counteroffer to it, in itself, evidences his awareness of their ongoing disagreement. Second, no oral agreement could have been reached on December 20 because, as the record makes clear, Naffah not once, but twice, rejected Lal's view of how he was to be compensated for his services. Lal has himself admitted that he understood that any agreement reached at the December meeting would later be reduced to writing. Where parties intend for a written or formal contract to follow negotiations, there can be no agreement until the written document is executed. (*Chicago Title & Trust Co. v. Ceco Corp.*

(1980), 92 Ill. App. 3d 58, 415 N.E.2d 668; *Knightsbridge Realty Partners, Ltd. v. Pace* (1981), 101 Ill. App. 3d 49, 427 N.E.2d 815.) Even if an understanding of this kind between the parties had been lacking, there was sufficient precedent with the procedures followed with the former expired contract to have alerted Lal that a writing of some kind memorializing their agreement would shortly follow. Finally, by accepting the amounts tendered to him as full payment for his services, Lal assented to the terms of the proposed contract. Lal's pretext for accepting these benefits is that he assumed that Naffah was paying as agreed, meaning that his salary would be fixed to a percentage of the practice's profits. However, as this court has already noted in other instances, an assumption cannot form the basis for holding an alleged oral agreement binding. See *Cohen v. Washington Manufacturing Co.* (1979), 80 Ill. App. 3d 1, 4, 398 N.E.2d 1202, 1203.

■ Affirmance of the trial court's decision granting defendants' motion for summary judgment is also proper on the basis that Lal has failed to demonstrate by competent evidence that material factual disputes exist. Lal's sole source of evidence are those contained in his briefs. The facts contained therein were purportedly extracted in summary fashion from various depositions. However, these depositions were neither attached to Lal's brief in the trial court nor do they now form a part of the record on appeal. It has been firmly established by this State's highest court that a deposition which does not appear in the certified record of the proceedings below and the absence of which was not explained by the brief on appeal cannot be considered by the reviewing court. (*Howard v. Industrial Com.* (1980), 81 Ill. 2d 50, 405 N.E.2d 750.) Furthermore, in *Baker v. Chicago Transit Authority* (1978), 65 Ill. App. 3d 91, 93, 382 N.E.2d 450, 453, we ruled:

> "[I]n the absence of a proper and complete report of proceedings, this court is compelled to assume that the evidence presented at trial supported the judgment of the trial court and to affirm the judgment appealed from. [Citation.]"

Having already established that no oral agreement was reached by the parties on December 20, 1974, we need not address the issues involving the Statute of Frauds and the doctrines of estoppel, waiver, accord, and satisfaction.

Affirmed.

SULLIVAN, P.J., and PINCHAM, J., concur.