SPOMENKA M. RYBAK, Plaintiff and Counterdefendant-Appellant and Cross-Appellee, v. DONALD J. PROVENZALE, Defendant and Counterplaintiff-Appellee and Cross-Appellant.

Second District   No. 2—88—0170

Opinion filed April 17, 1989.

Susan E. Cox, of McDermott, Will & Emery, of Chicago (Douglas C. Tibble, of counsel), for appellant.

Thomas W. Fawell, of Thomas W. Fawell & Associates, P.C., and Katten, Muchin & Zavis, both of Oak Brook (John J. Curry, Jr., of counsel), for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff, Spomenka Rybak, a dentist, filed a four-count amended complaint in the circuit court of Du Page County against the defendant, Donald J. Provenzale, also a dentist, for breach of contract, breach of fiduciary duty, punitive damages, and conversion. Provenzale counterclaimed for breach of contract and fraud.

Following a bench trial, the court entered judgment in favor of Rybak against the defendant in the amount of $6,631.95 and denied the defendant any relief on his counterclaim. Both parties appeal.

Rybak's appeal presents these issues: (1) whether a written agreement between herself and the defendant was enforceable; (2) whether she was entitled to credit for funds held by the defendant under the terms of their oral contract; (3) whether the court's judgment is inconsistent with its findings of fact; and (4) whether compensatory and punitive damages should have been awarded due to the defendant's breach of his fiduciary duties to her. The defendant's cross-appeal presents these additional multipart issues: (5) whether the court's denial of his counterclaim is against the manifest weight of the evidence where (a) exhibit No. 100, a xerographic copy of the alleged written agreement, should not have been admitted, (b) exhibit No. 100 was wholly fraudulent, (c) Rybak's expert's testimony regarding exhibit No. 100 should not have been allowed, (d) the court failed to acknowledge Rybak's lack of credibility, and (e) Rybak breached her associ-

ate's agreement with him and intentionally defrauded him; and (6) whether the court's judgment was against the manifest weight of the evidence as to (a) its $5,000 award for legal expenses and (b) its $1,631.95 award for unpaid compensation.

From 1975 to July 6, 1982, Rybak worked as a dentist in defendant's dental office in Downers Grove. Pursuant to an oral agreement which is undisputed by the parties, Rybak received as compensation 50% of the fees received from patients she treated, less laboratory and other expenses attendant to those patients. It was, and is, defendant's position that this remained the parties' agreement until Rybak left the office in July 1982 and relocated her practice. Rybak's contention, however, is that she and Provenzale subsequently orally modified this agreement in late November 1978 and in August 1979 and that the latter modification was memorialized by a written agreement on August 31, 1979. The defendant denies any of these subsequent oral or written modifications occurred or that he ever signed the written agreement identified at trial as plaintiff's exhibit No. 100 (PX100).

PX100 provided that all monies paid against the purchase of a partnership interest over and above $2,000 per month (Rybak's share of the office expenses) would be returned, with interest, to Rybak if she did not purchase a partnership interest in the defendant's practice. Rybak did not purchase a partnership interest in the defendant's practice, and she relocated her practice in July 1982. She contends the defendant retained a total of $54,568.17 over and above the $2,000 per month specified in the agreement. Rybak sought to recover this amount plus interest as provided by the parties' written agreement, or a total of $94,459.14 through January 1, 1988. Rybak also sought to recover $250,000 in punitive damages from the defendant due to his breach of his fiduciary duty to her.

The defendant maintained that he did not sign the August 31, 1979, agreement and that the only agreement which Rybak and he had with respect to her compensation was that she was to be paid 50% of her net collections (fees earned from her treatment of patients minus laboratory fees and other related expenses). The defendant's counterclaim sought to recover at least $32,128.10, which amount the parties stipulated Rybak collected and retained directly from patients treated by her after January 1, 1980, rather than processing the receipts through the defendant's office account. The defendant also sought punitive damages from Rybak in the amount of $250,000.

The trial court found the conduct of the parties showed their original agreement was changed and Rybak's compensation was no longer

limited to 50% of the net funds collected from patients treated by her. Although the court believed the defendant signed the agreement (PX100), it found PX100 was not sufficient to establish a contract between the parties and that it was "an agreement to agree to some other arrangement." The court also found, however, that PX100 was "sufficient to modify the original agreement limiting Ms. Rybak's compensation to only 50% of the funds she earned." Accordingly, it awarded Rybak $6,631.95 ($5,000 in lab dispute legal fees for which it found the defendant admitted responsibility, and $1,631.95 representing fees, less expenses, collected by the defendant between June 26 and July 6, 1982, for work done by Rybak). It denied the defendant's counterclaim in its entirety. Neither the court's oral decision nor written judgment specifically mentioned Rybak's claim for punitive damages, but in the course of its oral decision, the court stated: "[N]either side wins is what the decision is."

■ The defendant has moved this court pursuant to Supreme Court Rule 362 (107 Ill. 2d R. 362) for leave to amend his countercomplaint to include a third count for conversion. The motion was ordered taken with the case, and we now deny it.

The defendant's motion alleges that the "elucidation of the fact at trial that [Rybak] removed patient charts and ledgers from [his] practice without authorization" formed an integral part of her intentional scheme to wrongfully deprive his practice of fees, services and other assets. Defendant's motion further alleges that, inasmuch as Rybak's actions were "implied in and were necessarily related to the claims set forth in the Countercomplaint," it is necessary to amend the countercomplaint to conform to the evidence and to insure that justice is done between the parties. He alleges Rybak will not be prejudiced by the amendment since (at the time of the filing of the motion) her first brief had not yet been filed and she was advised of the claim for conversion contained in the amendment by virtue of the proofs and argument at trial.

Rybak filed her objections to this proposed amendment, asserting the amendment is not necessary in that it will not serve to complete the record, will not conform the pleadings to the proof, or correct any error in the pleadings. Further, it would be prejudicial to her in that it attempts to set up a new cause of action of which she had no prior notice and neither opportunity nor reason to controvert at trial. Lastly, the facts in the record do not support the proposed amendment and proof of numerous elements of the new cause of action would be required if the amendment were allowed.

This court has the authority to permit the amendment requested.

(See 107 Ill. 2d Rules 362, 366(a)(1); Ill. Rev. Stat. 1987, ch. 110, par. 2—616(c).) However, the record does not support Provenzale's claim of conversion, and additional proof would be required. Provenzale's proposed amendment, in fact, is insufficient to state a cause of action for conversion in that it fails to allege a demand was made upon Rybak for return of the items. *A.T. Kearney, Inc. v. INCA International, Inc.* (1985), 132 Ill. App. 3d 655, 664.

The lack of proof in the record on the elements of the claim contained in the proposed amendment belies Provenzale's assertion that Rybak had notice of the claim by virtue "of the proofs at trial." Nor did Provenzale's argument at trial put her on such notice where counsel argued Rybak's removal of the records from Provenzale's office was "part and parcel of [his] claim for fraud." Accordingly, we deny Provenzale's motion to amend his countercomplaint.

### RYBAK'S APPEAL

The court specifically found Provenzale signed the agreement marked PX100, but it refused to enforce its terms on the basis it was "an agreement to agree to some other arrangement." Rybak contends the agreement is enforceable where the condition precedent to Provenzale's refund of the fees collected from patients treated by her and retained over and above $2,000 per month occurred: that is, she did not purchase a partnership interest in his practice. The defendant contends the court's refusal to enforce PX100 should be affirmed and argues that PX100 cannot be enforced as a binding contract inasmuch as it lacks certain definite terms with respect to the elements of an agreement to purchase part of the practice, such as specification of purchase price and the method of payment or financing of the purchase or terms of interest.

We are unable to reach the merits of this issue for several reasons. First, it is not clear from the record that PX100 actually was admitted in evidence. Second, assuming, *arguendo*, it was admitted, we cannot locate it amongst the numerous exhibits submitted with this record, and the facsimile provided in Rybak's appendix bears no identification number. Third, also assuming, *arguendo*, PX100 was admitted, we agree with the defendant that its admission was improper.

In order to lay a foundation for the admission of a copy of an original writing, the proponent must prove the prior existence of the original, its loss, destruction, or unavailability, the authenticity of the substitute, and the proponent's own diligence in attempting to procure the original. (*Gillson v. Gulf, Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193; *Zurich Insurance Co. v. Raymark Industries, Inc.* (1986),

145 Ill. App. 3d 175, *aff'd* (1987), 118 Ill. 2d 23; *Electric Supply Corp. v. Osher* (1982), 105 Ill. App. 3d 46.) "When an original is traced to the possession of a third party, it must be shown that the third party cannot be subpoenaed to produce the original at trial or at a deposition and that no other judicial procedure compelling production is available." E. Cleary & M. Graham, Handbook of Illinois Evidence §1004.4, at 670 (4th Ed. 1984).

■ Rybak testified she gave the original agreement to Orrin Dressler so he could make copies of it for her. The original was never returned to her, although she testified she asked Dressler for it. Rybak offered no evidence to show that the original was lost, destroyed, or that Dressler was not subject to the subpoena power of the court. Rybak's argument, in fact, acknowledges Dressler's presence in the courtroom during trial, and the court commented that "only [Mr. Dressler] is aware as to what happened to and where the original which [Dr.] Provenzale signed disappeared to." Inasmuch as PX100 was inadmissible, we find no error in the court's refusal to enforce its terms.

Rybak next contends that even if the court did not err in finding that PX100 was not an enforceable contract, it erred by not finding the existence of an oral agreement between herself and the defendant after 1978 which obligated him to either credit her with $54,568.17 toward the purchase of a partnership interest or to return that amount to her with interest when she decided not to purchase a partnership interest.

■■ In order for an oral contract to be binding and enforceable, its terms must be definite and certain (*Harmon v. Dawson* (1988), 175 Ill. App. 3d 846; *Lal v. Naffah* (1986), 149 Ill. App. 3d 245; *Vandevier v. Mulay Plastics, Inc.* (1985), 135 Ill. App. 3d 787), and there must be a meeting of the minds (*Richton v. Farina* (1973), 14 Ill. App. 3d 697). The party who asserts the existence of an oral agreement has the burden of proving its terms. (*In re Estate of Kern* (1986), 142 Ill. App. 3d 506.) "[W]hether an oral contract exists, its terms and conditions and intent of the parties are questions of fact. A reviewing court may not reverse the judgment of the trial court merely because different conclusions could be drawn" (*Kern*, 142 Ill. App. 3d at 514), but may reverse if the court's judgment is contrary to the manifest weight of the evidence (*People v. Boyt* (1984), 129 Ill. App. 3d 1, *aff'd* (1985), 109 Ill. 2d 403; *Howard A. Koop & Associates v. KPK Corp.* (1983), 119 Ill. App. 3d 391). For a judgment to be against the manifest weight of the evidence, it must appear that a conclusion opposite to that reached by the trier of fact is clearly evident. *First Security*

*Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 794.

■ The trial court found the original agreement between the parties "changed" and that Rybak's compensation was no longer limited to 50% of the funds earned for her treatment of patients. It also specifically found the defendant signed the August 31, 1979, agreement. It refused to find the agreement enforceable, however, and found Rybak had not established what portion of the funds retained she was entitled to recover.

The evidence supports a finding that the parties orally modified their original agreement in November 1978 to provide for a "cap" on the amount of funds the defendant would retain from the fees paid by patients treated by Rybak. Although the defendant did not want to simply lease Rybak space in his office because he expected her earnings to increase and, thus, his to increase also, he admitted he was interested in her becoming a partner and discussed the possibility of having an evaluation done of the practice. Rybak was dissatisfied with her position as an associate, recognized leasing space was less expensive than maintaining her own office, but lacked the funds to buy into the partnership. Thus, the proposed "cap" was beneficial to each parties' interest in eventually forming a partnership. Rybak testified it was determined at year's end that Provenzale's usual 50% share of the net fees earned from her treatment of patients was $2,000 and that amount was agreed upon as the cap.

Despite his admitted interest in Rybak's eventual partnership with him and knowledge that Rybak lacked the means to buy into the practice, Provenzale denied he agreed to the cap arrangement. However, an office employee, Lorna Konicki, testified the defendant told her when she began working in the office in 1979 that he and Rybak each had their own practice and that Dr. Rybak paid $2,000 toward expenses.

Rybak testified that on August 30, 1979, the defendant's 50% share of fees earned by her treatment of patients already exceeded the $24,000 yearly cap and she told him she wanted to draw on that excess amount. She testified the defendant told her, however, that he was "in the red." He proposed they continue the same split of funds collected and stated he would credit funds retained over the $24,000 toward her purchase of a partnership interest. Rybak liked the idea, but she wanted an agreement, and Provenzale told her to draft something. At home that evening, she typed a one-page, two-part agreement (identified at trial as discussed above as PX100). The top portion set forth her obligation to pay Provenzale $2,000 per month toward office expenses, and the bottom portion set forth, *inter alia*, Proven-

zale's agreement to refund to her with interest "all monies paid against partnership purchase (over and above $2,000 a month pro shared office expenses)." Such refund was to be made "[i]n case that Spomenka Rybak, D.D.S. for any reson [*sic*] will decide not to finalize the purchase of the partnership."

Notwithstanding the inadmissibility and, thus, unenforceability of PX100, other secondary evidence of the terms and existence of an agreement between the parties which was admitted at trial supports a conclusion that Rybak and Provenzale mutually agreed to the terms testified to by Rybak. In addition to her testimony concerning the terms of the agreement, Rybak testified she presented the defendant with the agreement the next day, August 31, about noon. Her testimony that the defendant signed the agreement was corroborated by the testimony of several other witnesses.

Alice Kohlin, the defendant's dental assistant, was called into the meeting between the parties on August 31 and asked by the defendant to tabulate the amounts owed to Rybak at that time. The net fees owed Rybak as of August 30 were $3,564.14.

The evidence showed the defendant's checking account balance as of August 31, 1979, was only $1,888.50, and that Rybak received a check from him dated September 1, 1979, in the amount of $1,000. Although the defendant sought to explain this underpayment of money owed to Rybak by stating that he could have transferred funds from his savings account into his checking account and that he may not have made full payment to Rybak at that time because there were some unexplained missing checks, the evidence shows outstanding amounts were still owed to Rybak in mid-September 1979. This evidence supports Rybak's testimony that the defendant told her he was "in the red." Thus, it is likely he was highly motivated to propose the terms of the agreement alleged by Rybak. Alice Kohlin testified that she saw the defendant tear off the bottom portion of the agreement and sign it.

Lorna Konicki also corroborated the existence of the signed, half-page agreement. She testified Rybak and the defendant were having a "tense" discussion in the office in March 1980 when the defendant asked Konicki to make a copy of the agreement. She testified Rybak took the agreement, which was not full-sized, out of a wallet. She recognized Provenzale's signature on the paper. Konicki testified a picture of Rybak's son fell to the floor at the same time Rybak took out the agreement. It was Rybak's testimony that she kept the agreement, folded, in a wallet along with her passport and a picture of her son.

Judy Littleton, Rybak's dental assistant from 1981 to 1984, testi-

fied she was present at a meeting in September or October 1981 between Rybak and Provenzale at which they discussed which doctor's name should be on the insurance forms. At that time, Rybak was "really mad and she was waving around some paper stating that she had some agreement and she can do what she wants regarding—with me in doing her insurance forms." Littleton described the paper Rybak was waving around as a small piece of paper which was folded or ripped. Littleton further testified that in July 1982 Rybak showed her the original agreement which Littleton described as "a shorter piece of paper *** [not] full length *** [titled] Agreement *** signed by Dr. Provenzale" in blue ink. Rybak also testified Provenzale signed the agreement in blue ink. Littleton corroborated Rybak's testimony that she gave this original agreement to Orrin Dressler on that date in July for him to make copies.

Despite the inadmissibility of PX100, the foregoing evidence and the court's finding that Provenzale signed the agreement establishes the defendant's assent to its terms. This evidence distinguishes the instant cause from *Lal v. Naffah* (1986), 149 Ill. App. 3d 245, relied on by the defendant. In *Lal,* the plaintiff unsuccessfully claimed he had an oral agreement with the defendant fixing his compensation at a percentage of the profits. The contract first signed by the plaintiff in that case did not include a provision that his salary would be tied to the profits of the practice. When that contract expired, the plaintiff once again asked to share in the profits of the practice but was tendered a written employment contract which provided that future compensation would be tied to the defendant's salary and not the profits of the practice. The plaintiff did not sign the agreement, but he continued to work for the defendant for the next five years, accepting without protest 117 semimonthly checks drawn on the defendant corporation's account. The court found there was no enforceable oral contract where the evidence showed there was no mutual assent by the parties to the terms alleged by the plaintiff.

Other evidence that the parties here reached an agreement is that Rybak began accepting payments directly from patients and their insurers rather than funneling all collections through the defendant's books and accounts. Rybak, Littleton, and Konicki each testified the defendant observed Rybak directly taking checks. Rybak also began paying some of her laboratory fees directly, and she assumed responsibility for the defense of a lawsuit for unpaid laboratory invoices. The defendant admitted he had ready access to the office day sheets, deposit records, patient files and patient ledger cards, all of which disclosed Rybak's practice after January 1980 of accepting some pay-

ments directly from patients.

The court's finding that Rybak "failed to establish what portion, if any, other than the $1,631.91 *** she might be entitled to as to those funds that had been retained" contains an inherent contradiction inasmuch as its award of $1,631.91 represents 100% of the fees stipulated by the parties to have been collected from patients treated by Rybak between June 26 and July 6, 1982. The court specifically found the parties' original oral agreement was changed and that her compensation was no longer limited to 50%. No percentages or splits other than 50% as originally agreed or 100% less $2,000-per-month office expenses have ever been in issue, and plaintiff's exhibit No. 19 admitted at trial showed $51,139.72 retained by Provenzale over and above Rybak's net collections for the years 1978-82 less office expenses and amounts received from Provenzale.

We conclude the court's judgment was against the manifest weight of the evidence and must be reversed insofar as it did not award Rybak all the funds retained by the defendant over and above the $2,000-per-month office expenses she agreed to pay, plus interest. Because we have so concluded, we need not address Rybak's further contention the court's judgment bears no relation to the evidence presented at trial.

■ Rybak next contends the court erred in not granting her claim for $94,459.14 in compensatory damages and $250,000 in punitive damages against the defendant for breach of his fiduciary duties to her. In violation of supreme court rules, however, she cites no relevant authority in support of her contention, and we consider the issue waived. 107 Ill. 2d R. 341(e)(7); *Button v. Elmhurst National Bank* (1988), 169 Ill. App. 3d 28, 38; *In re Marriage of Anderson* (1985), 130 Ill. App. 3d 684, 688-89.

### DEFENDANT'S CROSS-APPEAL

The court denied all relief to the defendant under his two-count countercomplaint for breach of contract and fraud. He contends the court's judgment was against the manifest weight of the evidence.

The defendant first argues it was reversible error for the court to find that he signed the original of PX100 where the evidence disclosed it was a wholly fraudulent document. The opinion of the defendant's expert witness, Charles Scott, was that PX100 was a photocopy of a constructed or fabricated document. This opinion was based primarily on the fact the typewritten signature line and letters were slightly larger than the typewritten text of the body of the agreement, and the signature line was out of vertical alignment with

the body of the text above. The defendant contends Scott's testimony clearly and convincingly outweighed the testimony of the eyewitnesses to the purported original of the agreement, who he argues were biased in the first instance.

■ Experts' opinions are only as valid as bases or reasons for them (*In re T.D.W.* (1982), 109 Ill. App. 3d 852); the trier of fact is not bound to accept the opinion of an expert (*Harris v. Bethlehem Steel Corp.* (1984), 124 Ill. App. 3d 449), and the weight to be accorded expert testimony is for the trier of fact to decide (*Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290). Expert testimony augmented by other circumstances may overcome the testimony of attesting witnesses (*In re Estate of Ragen* (1981), 96 Ill. App. 3d 1035, 1043-45); however, the testimony of an expert is judged by the same rules of weight and credibility which are applied to other witnesses (*Presswood v. Morris* (1979), 70 Ill. App. 3d 513).

■ It was properly within the province of the court here as the trier of fact to reject Scott's testimony that PX100 was a constructed document in light of the testimony of the eyewitnesses who saw the defendant sign the original and those who later saw the original document. Moreover, Scott admitted in his testimony that he had not examined the typewriter used to create the agreement, did not know its condition of repair, and did not know if it was a manual. He did not know the type of machine the agreement was copied on, by whom, when, or how it was done. He admitted that photocopy machines cause letter size distortion, and he could not tell how many copy generations old the agreement was, or whether other factors could have contributed to distortion. Moreover, in addition to the eyewitnesses to the agreement, Rybak presented her own expert, Dr. Iain McIntyre, who testified to an experiment he performed wherein he drew lines on paper, made a xerographic copy, and measured the expansion difference of the lines at the top, middle, and bottom of the page compared with the original. Lines at the top of the page showed a .15% expansion; middle lines were within the experimental error factor of .05% and the expansion of the lines at the bottom was .31%.

■ The defendant next argues it was reversible error to admit the testimony of Dr. Iain McIntyre as a rebuttal expert witness in the face of his objection based on Supreme Court Rule 220 (107 Ill. 2d R. 220) and to qualify McIntyre as an expert witness. Defendant complains that McIntyre was not disclosed as a witness until the day of his testimony, at which time his counsel was allowed to depose him for one hour.

Assuming *arguendo* it was error for the court to allow McIntyre

to testify despite Rybak's noncompliance with Supreme Court Rule 220, consistent with cases which have required strict compliance with the Rule (*Jarmon v. Jinks* (1987), 165 Ill. App. 3d 855; *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214; *McDonald's Corp. v. Butler Co.* (1987), 158 Ill. App. 3d 902), and error for the court to qualify McIntyre as an expert witness—a matter within its sound discretion (*People v. Jennings* (1911), 252 Ill. 534, 550) subject to reversal only if it constitutes a gross abuse of discretion (*People v. Free* (1983), 94 Ill. 2d 378, 410)—the defendant's assertion McIntyre's testimony was "of no value in weighing or contradicting testimony of [expert witness] Charles Scott" defeats his claim that such error was reversible. It is axiomatic that a reviewing court will not find error to be reversible unless it is demonstrated that the error was substantially prejudicial and affected the outcome of the trial. See, *e.g.*, *Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 414.

The defendant next contends the trial court's failure to acknowledge what he asserts are Dr. Rybak's substantial credibility problems "merits reversal of the court's ruling on exhibit No. 100 and its denial of Dr. Provenzale's counterclaims as well as a denial of Dr. Rybak's appeal."

■ It is the trial court's function to determine the credibility of witnesses (*Orchard Shopping Center, Inc. v. Campo* (1985), 138 Ill. App. 3d 656) and to resolve inconsistencies in testimony (*Amoco Realty Co. v. Montalbano* (1985), 133 Ill. App. 3d 327), and this court cannot substitute its opinion for the finding of the trier of fact unless its holding is against the manifest weight of the evidence (*Scheduling Corp. of America v. Massello* (1987), 151 Ill. App. 3d 565).

■ For the reasons discussed above, we have found PX100 was inadmissible and that the court's judgment awarding Rybak $6,631.95 was against the manifest weight of the evidence. We do not find the court's judgment denying the defendant's counterclaim was against the manifest weight of the evidence, however, as discussed below.

The defendant contends the court's judgment denying him relief on his countercomplaint for breach of contract, fraud, and conversion was against the manifest weight of the evidence. As discussed previously, his motion to add a count at this time for conversion is denied, and his argument relating to conversion will not be addressed.

As to breach of contract, the defendant's complaint alleged Rybak at all times was an associate employed by his dental practice pursuant to the terms of their oral agreement whereby all funds collected from patients treated by her were turned over to him in return for which

he provided her office space and dental equipment and paid her 50% of all funds collected for dental work done by Rybak less 50% of all dental lab bills incurred by Rybak. Notwithstanding that relationship, it was alleged that Rybak actively concealed her failure to turn over and give to him all fees collected by her and that in the exercise of all due diligence he was unable to discover Rybak's breach until Rybak filed her action against him. In his claim for fraud, he alleged that Rybak represented to him that she was disclosing and turning over to him all fees collected for her work in her capacity as a dentist, but that such representations were false, were known by Rybak to be false and that Rybak performed her services as a dentist "with deceit and surreption [*sic*—presumably subreption]" and did not disclose or turn over all fees collected by her. He claimed further that his belief in and reliance on her representations induced him to maintain the employment relation with her and to pay her 50% of the limited fees which she chose to disclose, that she actively concealed her failure to turn over all fees to him and that in the exercise of all due diligence he was unable to discover her breach until she filed her action against him.

The parties stipulated that prior to July 6, 1982, Rybak collected directly from patients at least $32,128.10 in fees which were not recorded in the office day sheets, nor deposited in the office bank account, and which were shown on Rybak's Federal income tax returns for the years 1980, 1981 and 1982.

The defendant's contention here is that the evidence shows Rybak was moonlighting without authority and that these activities constituted a breach of their contract and fraud. Consequently, he asserts, the court's judgment denying his countercomplaint was against the manifest weight of the evidence.

Contrary to the defendant's argument, the fact the court found that the original oral agreement between the parties "was changed" and it no longer limited Rybak to 50% of the funds earned is sufficient to defeat the defendant's cause of action for breach of contract.

Defendant argues "the court did not specifically find that Dr. Rybak's position as an associate was extinguished at any time or that her overall duties as an associate had been terminated." The court did specifically find, however, that the conduct of the parties established "the 50 percent limitation was no longer the limit on [Dr.] Rybak's basis for compensation." It further found:

"[T]he taking of funds by [Dr.] Rybak was openly and honestly done and [Dr.] Provenzale was aware that she was not only taking these funds, he was not only aware that she was paying her

lab bills and insurance billings, as manifested by the evidence, including some of the split payments of lab bills, et cetera, I think [Dr.] Provenzale was aware of how the money came in and went out."

It was the defendant's burden as plaintiff in the countercomplaint to prove every material term of the contract. (*Vandevier v. Mulay Plastics, Inc.* (1985), 135 Ill. App. 3d 787.) As the court found and as Rybak argues, the evidence showed he was aware of her practice of taking checks directly from patients and the fact she paid some of the lab bills herself. The defendant's assertion that Lorna Konicki, who observed Rybak take checks and testified that the defendant saw Rybak do this as well, only worked at the practice between 1979 and 1980; misstates the record. Konicki testified she left the office in April 1980 and, thus, the defendant's conclusion Rybak must also have been taking checks directly from patients prior to 1980 is without basis. The defendant's argument also ignores the testimony of Judy Littleton, who testified that the defendant was present on occasions when Rybak would take checks at the front desk and put them in her pocket, and that after Rybak and the defendant had a discussion in which Rybak waved a paper which was not a full sheet in front of the defendant (presumably the parties' original written agreement), Littleton was instructed to do only Rybak's insurance and put her name on the forms. We conclude the court's judgment denying this aspect of defendant's counterclaim was not against the manifest weight of the evidence.

Our conclusion is the same with regard to the defendant's claim of fraud. The defendant initially presented a two-paragraph argument on this issue which was greatly expanded upon in his reply brief and in which he contends for the first time that he presented a *prima facie* case of fraud which Rybak bore the burden of overcoming. Defendant's argument made for the first time in his reply is a violation of Supreme Court Rule 341 (107 Ill. 2d R. 341(e)(7)) and is waived.

Addressing his initial argument, however, we find no error in the court's judgment. Fraud encompasses anything calculated to deceive, as in acts, omissions and concealment including breach of legal or equitable duty, trust or confidence, resulting in damage to another, and encompasses silence if accompanied by deceptive conduct or suppression of material facts constituting an act of concealment. (*Grane v. Grane* (1985), 130 Ill. App. 3d 332, 344.) A *prima facie* claim of fraud is established by allegations that the wrongdoer knowingly misrepresented material fact for the purpose of inducing the claimant to act, that the claimant reasonably believed the misrepre-

sentation to be true and that he detrimentally relied upon it. (*Thrall Car Manufacturing Co. v. Lindquist* (1986), 145 Ill. App. 3d 712.) The evidence at bar fails to show any deceptive conduct on Rybak's part. Rather, as the court specifically found, her conduct was "open and obvious," and several witnesses testified they observed Rybak take checks in Provenzale's presence. This, and evidence that all payments received were recorded on ledger cards kept at the front desk available at all times for Provenzale's inspection, supports the court's judgment to deny the defendant any relief on this count of his counter-complaint.

The defendant's final contentions are that the court's awards of $5,000 to cover legal expenses paid by Rybak in connection with a dispute with a lab or labs concerning work done and for $1,631.95 as unpaid compensation for the period June 26 to July 6, 1982, are against the manifest weight of the evidence.

We agree with the defendant that the court's $5,000 award for legal expenses incurred by Rybak is against the manifest weight of the evidence. Rybak made no claim for reimbursement of these expenses, and the defendant's testimony at trial cannot reasonably be construed as an admission that he owed her reimbursement for same. We agree with the defendant that the thrust of his response to counsel's cross-examination was that he, in effect, actually had assumed liability for these expenses in that Rybak testified she agreed to barter her dentistry services to the attorney in exchange for the legal services provided by him. Although Rybak does not admit to this barter of services, she nonetheless testified at trial that there was an understanding the legal fees related to her practice and that she had to pay them.

As a general rule, the relief awarded a party should conform to that sought by the pleadings (*Luciani v. Bestor* (1982), 106 Ill. App. 3d 878), although a court has the power to grant any relief within the issues formed by the pleadings and justified by the evidence, regardless of the specific relief demanded (*Hare v. Canvassing Board* (1986), 146 Ill. App. 3d 88). The court's $5,000 award falls neither within the issues framed by the pleadings nor the proof adduced at trial and must be reversed.

As to the $1,631.95 of unpaid compensation, the defendant argues he properly retained this amount to mitigate the damages he sustained by virtue of Rybak's moonlighting activities, which the parties stipulated amounted to $32,128.10 in fees. Since this court finds no error in the trial court's denial of the defendant's counterclaim against Rybak for her moonlighting because such activities were

openly and obviously conducted and, therefore, did not constitute evidence of a breach of her contract with defendant, we find that this amount was properly awarded Rybak.

Rybak's contention that she should also have been awarded $1,796.75 representing the amount of fees collected after July 6, 1982, from patients treated by her before that date is raised for the first time in her reply brief in violation of Supreme Court Rule 341 (107 Ill. 2d R. 341(e)(7)) and is waived.

The judgment of the circuit court of Du Page County denying the defendant's countercomplaint is affirmed.

The court's judgment awarding Rybak $5,000 in legal expenses is reversed.

The court's judgment awarding Rybak $1,631.95 is affirmed, and the cause is remanded for entry of an increased judgment in favor of Rybak under the terms of her oral agreement with the defendant consistent with this opinion.

Affirmed in part; reversed in part and remanded.

INGLIS and DUNN, JJ., concur.