BERNARD HEWITT *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. MILDRED HURWITZ, Ex'r of the Estate of Paul Hurwitz, Deceased, Defendant-Appellee and Cross-Appellant (La Salle National Bank, as Trustee, Defendant).

First District (5th Division) No. 1—90—2301

Opinion filed March 20, 1992.

Donald L. Bertelle, of Chicago, for appellants.

Herbert N. Sirott, of Chicago, for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs Bernard Hewitt and Ruberta Karasik, executor of the estate of Sidney Z. Karasik, appeal from judgment entered after a bench trial finding that a partnership existed to purchase and develop certain property and that the property in question had a fair market value of $660,000. Defendant Mildred Hurwitz, executor of the estate of Paul Hurwitz, cross-appeals from the same judgment. We consider whether the trial judge's finding as to the value of the partnership's property was against the manifest weight of the evidence. For the following reasons, we reverse and remand for new trial.

Plaintiffs filed a three-count complaint against defendant as the executor of Paul Hurwitz' estate. The complaint alleged that Hewitt, Karasik, and Hurwitz, who was Hewitt's brother, orally agreed to form a joint venture to purchase and develop certain property. Hewitt had a 50% share of the profits and losses of the joint venture, and Karasik and Hurwitz each had a 25% share. They purchased the property in 1978 and placed it in trust for their benefit with defendant La Salle National Bank. On July 17, 1986, Hurwitz died. In count I of the complaint, plaintiffs sought a declaratory judgment that the joint venture dissolved with the death of Hurwitz. Count II was disposed of by an agreed order and is not relevant on appeal. In count III, plaintiffs requested an accounting

of the joint venture and a determination of the value of Hurwitz' interest.

Defendant answered the complaint denying its material allegations and filed a counterclaim, alleging breach of fiduciary duty, which is not at issue on appeal.

In a bench trial, Hewitt testified on plaintiffs' behalf that he, Karasik, and Hurwitz orally agreed to purchase four acres of land in unincorporated Cook County and develop it as a multi-unit residential complex. In 1978, they obtained a mortgage for $165,000 and purchased the property for $175,000. The property was subsequently annexed to the Village of Mount Prospect, which passed an ordinance in 1978 granting plaintiffs a special use permit to build 88 units. Due to economic conditions, the property was not developed by the time of Hurwitz' death on July 17, 1986. Hewitt testified that at that time, there was some dispute as to whether the village would restrict construction to only 64 units as allowed under its building code. In the end of 1986, the issue was resolved and the village allowed plaintiffs to build 88 units. In 1987, Hewitt entered into an agreement with Albert Katz under which Katz would pay the $165,000 mortgage on the property in exchange for 22 rented apartments in the completed project. After the mortgage was paid, Hewitt owned 25% of the joint venture.

Norman Shapiro, an accountant who prepared the joint venture's tax returns, testified that on October 1, 1987, Katz paid the $165,000 mortgage on the property and obtained half of Hewitt's interest which was 25% of the joint venture. Katz' capital account with the venture was credited $165,000. A tax return for 1987 showed that Katz acquired a 25% interest in the venture.

Plaintiffs also called Neil King, an expert in the area of real estate appraisals, who appraised the property on three different occasions. In 1982, he determined that the value of the property was $2,000 per unit or $128,000. At that time, King was not aware that plaintiffs and Hurwitz purchased the property in 1978 for $175,000, although he admitted purchase price is a factor to consider in an appraisal. In December of 1985, he found its value decreased to $1,500 per unit or $96,000 because negative factors affecting the value intensified, such as increased truck traffic.

Subsequently, King appraised the property a third time and determined that its value on July 17, 1986, the date of Hurwitz' death, was $2,000 per unit or $128,000. King determined that the property was zoned for 16 units per acre for a total of 64 units. King based the appraisal on several factors. The property was an

unusual shape because it was long and narrow with only 164 feet of frontage. Also, although there were apartment buildings near the property, King considered the uses of other nearby properties as negative factors affecting the appraisal. Immediately to the south of the property was a bus storage facility and immediately to the west were electricity power lines. In the immediate vicinity of the property was a disposal company and a large oil tank farm.

King also based the appraisal on sales of similar properties. However, there were no recent sales of property zoned for multi-unit use in the immediate area, and as a result, he relied on the sales of four undeveloped properties located in Wood Dale, Arlington Heights, Palatine, and Buffalo Grove. The sales of those properties ranged from $4,444 to $6,500 per unit on lots ranging from 16 acres to 55 acres with zoning ordinances allowing for 10 to 14.75 units per acre. King testified that these properties were more valuable than the property in question because they were in better locations and the applicable zoning ordinances allowed fewer units per acre.

On defendant's behalf, Theodore R. Kowalski testified as an expert real estate appraiser. In his opinion, the property had a fair market value of $750,000 on July 18, 1986, the day after Hurwitz died. He based his opinion on the characteristics of the property, an ordinance allowing for the construction of 88 units, the uses of adjoining properties, and the general trend of real estate in the area. Kowalski testified that a 25% interest in the property was sold in October of 1987 for $165,000 and that a minority interest would generally be sold at a discounted price of 10% to 25%. As a result, the sale corroborated his opinion that the value of the entire property was $750,000. Kowalski also testified that the property appreciated between 10% to 15% annually. Additionally, an apartment complex with 300 units immediately to the north of the property sold for $12,100,000 in August of 1988. That sale, although involving improved property, indicated there was a demand for property in the area.

Plaintiffs called King as a rebuttal witness. King testified that the sale of the adjacent property for $12,100,000 did not indicate the value of the property in question because it was improved with 11 buildings containing 300 units, a swimming pool, and tennis courts.

After closing arguments, the trial judge found that plaintiffs and Hurwitz were either joint venturers or partners. He rejected both expert witnesses' opinions on the value of the property finding

they did not have reasonable bases for their opinions. He also believed that the sales of other properties presented by plaintiffs and defendant were not comparable to the property in question. The judge found that the value of the property at the time of Hurwitz' death on July 17, 1986, was $660,000 based on the evidence that Katz purchased a 25% share of the joint venture for $165,000 in October of 1987. An order was entered stating that the parties were partners in the acquisition and development of the property and that the fair market value of the property at the time of Hurwitz' death was $660,000.

Plaintiffs' post-trial motion was denied and they now appeal. Defendant cross-appeals.

OPINION

Plaintiffs challenge the trial judge's finding that the fair market value of the property on July 17, 1986, was $660,000. The judge based his finding on the sale of a 25% interest in the partnership for $165,000 to Katz in October of 1987. Plaintiffs argue that the judge improperly rejected the testimony of their expert and that the finding as to the value of the property was not based on the evidence because the sale to Katz was not for the property but for an interest in the partnership.

Defendant responds that the judge properly rejected the testimony of plaintiffs' expert. Also, defendant contends that the judge's finding as to the value of the property was supported by the evidence because the property was the partnership's only asset and, therefore, the sale to Katz of a 25% interest in the partnership was the equivalent of a 25% interest in the property.

In a bench trial, the judge must determine the credibility of an expert witness and the weight of his testimony but the judge is not bound to accept the expert's opinion. (*Rybak v. Provenzale* (1989), 181 Ill. App. 3d 884, 537 N.E.2d 1321.) The trial judge's findings, especially those involving credibility determinations, are entitled to deference. (*Zaderaka v. Illinois Human Rights Comm'n* (1989), 131 Ill. 2d 172, 545 N.E.2d 684.) A reviewing court cannot reverse the decision of a trial court after a bench trial merely because it would have reached a different conclusion; however, the decision should be reversed if it was against the manifest weight of the evidence. (*In re Application of County Treasurer* (1989), 131 Ill. 2d 541, 546 N.E.2d 506.) A judgment is against the manifest weight of the evidence when the opposite conclusion is clearly evident. *Fleisher v. Lettvin* (1990), 199 Ill. App. 3d 504, 557 N.E.2d 383.

In this case, the trial judge rejected the testimony of both experts whose opinions differed greatly as to the fair market value of the property. From a review of their testimony, the judge's finding was not erroneous.

Plaintiffs' expert, King, testified that the property was worth $128,000 and focused on the negative aspects of the property, such as its unusual shape and its proximity to a bus storage facility and power lines. King acknowledged, but apparently did not consider it significant, that there were several other apartment buildings on the same street in the immediate vicinity of the property. Also, King initially appraised the property in 1982 at $128,000, appraised it again in December of 1985 at $96,000, and then reappraised it at $128,000 in July of 1986. When he first appraised the property in 1982, he did not consider its purchase price in 1978, although purchase price is a factor to consider in an appraisal. Further, when he appraised the property for a second time in December of 1985, he found its value decreased to $96,000 because negative factors affecting the appraisal intensified. However, six months later, King found the property's value increased to $128,000, although he conceded that the negative factors were still present. This testimony as to the fluctuating value of the property within a six-month period, without a solid explanation for it, affected King's credibility even though the increased value benefited defendant slightly. Additionally, each time King appraised the property it was less than the price the partnership paid for it in 1978. King also relied on sales of comparable property in nearby towns ranging from $4,444 to $6,500 per unit but appraised plaintiffs' property at $2,000 per unit. The trial judge may not have accepted King's explanation that the other properties were more desirable to justify valuing plaintiffs' property at less than half the per unit price of those sales.

In contrast to King's testimony, defendant's expert, Kowalski, testified that the property was worth $750,000. Kowalski relied on the sale of an interest to Katz as if it were a partial sale of the property; however, Katz did not purchase an interest in the property but an interest in the partnership. Also, Kowalski relied on the sale of an adjacent apartment complex but that property was not comparable because it was improved and had 300 units.

For these reasons, it was well within the province of the trial judge to reject the experts' testimony.

Instead of relying on the experts' opinions, the judge relied on the sale of a 25% interest in the partnership to Katz for $165,000

in October of 1987 to establish the property's fair market value in July of 1986.

■■ The fair market value of property is the amount of money that a purchaser, willing but not obligated to buy the property, would pay an owner, willing but not obligated to sell the property, without taking into account the values or necessities peculiar to either party. (*Reynolds v. Coleman* (1988), 173 Ill. App. 3d 585, 527 N.E.2d 897.) Generally, the price paid for the property at a recent sale is the best evidence of value. *In re Application of Busse* (1984), 124 Ill. App. 3d 433, 464 N.E.2d 651.

■■ Evidence of the purchase price of property may be relevant to determine its value, but in this case the transaction the judge relied on was not a conveyance of the property. The transaction was a sale for an interest in the partnership. Although the property was the only asset of the partnership, the sale of an interest in the partnership did not necessarily establish the fair market value of the property. The sale of an interest in the partnership may have been worth more or less than the sale of its only asset, the property, depending on the potential profit or loss from the development of the property and other considerations. As a result, the trial judge's reliance on the sale of an interest in the partnership to determine the value of the property was erroneous. For these reasons, the judge's finding that the fair market value of the property was $660,000 on the date of Hurwitz' death was against the manifest weight of the evidence. This decision should not be interpreted as an indication that the property was worth more or less than $660,000 but only that the trial judge's finding was not supported by the evidence.

In her cross-appeal, defendant requests this court to enter judgment against plaintiffs directing them to pay defendant Hurwitz' share of the partnership. Based on our decision that the valuation of the property was against the manifest weight of the evidence, defendant's request must be denied.

Reversed and remanded for new trial.

McNULTY, P.J., and MURRAY, J., concur.