ELECTRIC SUPPLY CORPORATION, Plaintiff-Appellee, *v.* MARTIN OSHER, Defendant-Appellant.

First District (3rd Division)    No. 81-1389

Opinion filed March 24, 1982.

Robert M. Birndorf, of Law Offices of BERYL A. BIRNDORF, of Chicago, for appellant.

Stone, Pogrund & Korey, of Chicago (James P. Ziegler, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Martin Osher, appeals from a judgment for $9,293.43 entered in favor of plaintiff, Electric Supply Corporation, after a trial without a jury. Defendant, sued as a personal guarantor of a trust receipt, maintained in the trial court that his liability had been discharged by payment of $10,116 on September 5, 1978, and that plaintiff misapplied this payment to an antecedent debt of the principal, Knox Electrical Construction Company. On appeal defendant contends that the court erred in admitting evidence in violation of the best evidence rule, and that the trial court erroneously applied the equitable principle of application of payments.

Defendant is president of Knox, which received supplies from plaintiff in connection with construction of a project known as Lincoln Towers. During the course of the project, Knox, through defendant, requested waivers of lien from plaintiff in a specified monetary amount. In exchange for the waiver, Knox would execute a trust receipt in a corresponding amount for payment of supplies. Defendant would then present the waiver to Lincoln Towers, which would make a payout to defendant, and defendant would pay plaintiff in discharge of the trust receipt.

Plaintiff brought this action against defendant as guarantor of a trust receipt executed on September 5, 1978, for the balance due in the amount of $9,293.43. Defendant set forth in his answer an affirmative defense that the obligation had been discharged by payment of $10,116 on that same day. On the morning of trial, plaintiff was granted leave to file a reply to the affirmative defense. The reply was a general denial.

In his opening statement, plaintiff's counsel stated that he was going to surprise defense counsel and, for the first time, alluded to the existence of a prior trust receipt in the amount of $10,116. Examining defendant as an adverse witness, plaintiff showed defendant the unexecuted copies of the earlier trust receipt and waiver and elicited from him a denial that he had seen or executed them. Defendant also stated that he had not guaranteed any trust receipt other than the one of September 5. Plaintiff's witnesses then testified that when defendant requested a waiver of lien on September 5, he was told that he first must pay the antecedent debt of a trust receipt executed on August 29, 1978, in the amount of $10,116. No evidence was offered that this earlier trust receipt had been personally guaranteed.

Over defendant's best evidence objection, unexecuted copies of the earlier receipt and waiver of lien were received in evidence. Defendant unsuccessfully argued that no notice had been given of plaintiff's intention to use these documents, that no effort had been made to secure the originals, that there was an improper foundation for their introduction in evidence, and that they were hearsay. Plaintiff countered that defendant's denial at trial of the existence of the originals excused the requirement of requesting production at trial and that, in any event, the requirement had been met by a discovery request made in a chancery proceeding in which defendant had been named but from which defendant had been dismissed. Plaintiff agreed that the original waiver of lien would be in Lincoln Towers' possession.

Plaintiff's witnesses also testified that defendant agreed to pay off the prior trust receipt. They stated that defendant went to plaintiff's office on September 5, 1978, and handed an employee a check for $10,116. She voided the August trust receipt and handed it to defendant. He then executed and guaranteed the subject trust receipt, received a waiver, and left the office.

Defendant testified that on September 5 he made payment by check in the amount of $10,116 to plaintiff's employee. Moments later, defendant signed and personally guaranteed the subject trust receipt. In exchange, plaintiff's employee signed a waiver of lien and gave it to defendant. Defendant directed the employee to apply the payment to the subject trust receipt. That same day, defendant presented the waiver to Lincoln Towers and received a payment of $31,000 which he deposited in the bank. Defendant stated that he "covered" the $10,116 check that same day.

██ The best evidence rule requires that the original writing be introduced into evidence unless the original is shown to be lost, destroyed or unavailable. (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) In such a case, the proponent must prove the prior existence of the original,

its unavailability, the authenticity of the substitute and the proponent's own diligence in attempting to procure the original. (*Gillson v. Gulf, Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 246 N.E.2d 269.) The sufficiency of the evidence showing that it is not within the offering party's power to produce the original depends upon the circumstances of each case and is, to some degree, within the discretion of the trial court. (*People v. Baptist.*) Detention of the original by the opposing party is a basis for an unavailability finding provided that the proponent shows the opponent's possession or control of the original, transmittal of notice to the opponent that the particular document will be needed at trial, and the opponent's refusal or failure to produce the original at trial. (4 Wigmore, Evidence §1199, at 462 (Chadbourn rev. 1972).) Where the original is in the hands of a third party within the court's subpoena powers, a *subpoena duces tecum* should be served on the party. See McCormick on Evidence §202, at 414 (1954); 4 Wigmore, Evidence §1212(3)(a)(3), at 487 (Chadbourn rev. 1972); *cf. McDonald v. Erbes* (1907), 231 Ill. 295.

We believe that the trial court erred in admitting unexecuted copies of the trust receipt and waiver of August 29 into evidence. The original waiver of lien, if it existed, would be in the hands of Lincoln Towers. Plaintiff apparently made no attempt to recover the original from this third party. Since plaintiff totally failed to meet its burden of showing unavailability of the waiver of lien, the court abused its discretion in accepting the unexecuted copy of the purported original.

■■ Unlike the waiver of lien, the original trust receipt, if it existed, would have been in defendant's possession. Nevertheless, we do not believe that under these circumstances a request to produce the original is excused because defendant denied the execution and existence of the August trust receipt at trial. Where the pleadings and the nature of the proceedings place a party on notice that a particular document in his possession will be the subject of proof at trial, and other evidence corroborates the existence of the original, secondary evidence of the terms of the document is admissible. (*612 North Michigan Avenue Building Corp. v. Factsystem, Inc.* (1977), 54 Ill. App. 3d 749, 370 N.E.2d 236; *Soft Water Service, Inc. v. M. Suson Enterprises, Inc.* (1976), 39 Ill. App. 3d 1035, 351 N.E.2d 264.) In the present case, however, the existence of the trust receipt and waiver was asserted for the first time at the trial. Moreover, the only evidence tending to prove the existence of an original, executed trust receipt was the testimony of plaintiff's witnesses describing its execution and terms, testimony which itself falls within the best evidence rule. (See E. Cleary and M. Graham, Handbook of Illinois Evidence §1002.1, at 510 (3d ed. 1979).) In this regard, plaintiff's failure to attempt to recover the original waiver of lien from the third parties renders the secondary evidence of the trust receipt defective. Proof of the existence of the waiver in the

amount of $10,116 would have been highly probative of the existence of an executed trust receipt in that amount, since the record shows the parties' practice was to execute the waiver in exchange for the trust receipt. Nor do we believe that a discovery request of defendant in a prior action from which defendant was promptly dismissed obviated the need for a diligent search for the originals in the present action.

Finally, we disagree with plaintiff's contention that these exhibits were merely collateral to the issues in this case. A major issue is defendant's direction to plaintiff's agent when making payment. Evidence that the payment of $10,116 corresponds precisely to a prior indebtedness is probative of that direction.

We also must address another contention of defendant in which, relying on *Alexander Lumber Co. v. Aetna Accident & Liability Co.* (1921), 296 Ill. 500,. 129 N.E. 871, he maintains that the trial court erroneously applied the equitable principle of application of payments.

■■ A debtor has the right to direct the creditor to apply payment to any combination of outstanding debts he chooses. (15 Williston on Contracts §1795, at 388-92 (3d ed. 1972).) Where the debtor fails to direct payment the creditor may apply the money as he chooses, unless special circumstances exist giving rise to a special equity in the funds in favor of a surety or guarantor. (*Alexander Lumber Co. v. Aetna Accident & Liability Co.*) In *Alexander*, the debtor silently made payment with money obtained from a performance of a contract which had been guaranteed by a surety. The creditor applied the payment to an antecedent debt of the debtor. When the debtor defaulted on the subsequent debt, the creditor attempted to hold the surety liable. The court held that the surety possessed a special equity in the funds obtained vis-a-vis the contract it had guaranteed and that, despite the debtor's silence, the creditor had a duty to apply such funds so as to discharge the surety's obligation. The court further stated that the creditor's lack of knowledge of the source of the funds was not dispositive since the creditor could have easily learned the source through inquiry and since, under the facts, the creditor should have known the source.

■■ While we agree with defendant that *Alexander* has application to the present case, we do not believe that its holding mandates entry of judgment for defendant at this time. The principles enunciated in *Alexander* turn on the equitable consideration that a guarantor's rights should not be defeated by a creditor, rather than on a technicality such as the precise moment of payment. We therefore hold that a guarantor's special equity in the funds obtained vis-a-vis a contract which he guarantees arises at the inception of the guarantee and may be imposed on any such funds not yet applied by the creditor.

■■ Applying these principles, the trial court on remand should determine

whether defendant agreed, as plaintiff maintains, to apply payment to an antecedent debt and, if he did not, whether plaintiff should have known that the waiver of September 5 was to be the source of the payment of $10,116 on that day. In the former case, under *Alexander* defendant could not complain that the creditor had defeated his rights as guarantor, and in the latter case *Alexander* would require that plaintiff apply the $10,116 payment to discharge defendant's personal liability on the trust receipt of September 5, if the funds are traceable to the waiver of September 5.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

WHITE, P. J., and RIZZI, J., concur.