**2022 IL 127946**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 127946)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
CARL SMITH JR., Appellant.

*Opinion filed November 28, 2022.*

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Anne M. Burke, Neville, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.

## OPINION

¶ 1        We are presented with two issues in this appeal. First, we are called upon to determine whether video clips of surveillance footage re-recorded on an iPhone are admissible pursuant to Illinois Rule of Evidence 1003 or 1004 (eff. Jan. 1, 2011) or barred by the best evidence rule. The second issue presented is whether defendant, Carl Smith Jr., forfeited his argument the cell phone video clips of the surveillance

footage lacked an adequate foundation for admissibility. In August 2018, defendant was charged with one count of residential burglary alleging he knowingly and without authority entered Michael Whittington's apartment at 504 South Rawlings Street in Carbondale, Illinois, with the intent to commit therein a theft, in violation of section 19-3 of the Criminal Code of 2012. 720 ILCS 5/19-3(a) (West 2018). In a pretrial motion, defendant sought to bar admission of two short video clips recorded by pointing an iPhone's video camera at a screen as the recording of surveillance footage played. Defendant argued admitting the cell phone video clips would violate the best evidence rule (Ill. Rs. Evid. 1001 to 1004 (eff. Jan. 1, 2011)). Following hearings, the Jackson County circuit court denied defendant's motion to bar admission of the video clips. After a jury trial, defendant was convicted of residential burglary and sentenced to 6½ years' imprisonment. Defendant appealed. The appellate court affirmed in a split decision, finding the cell phone video clips were properly admitted into evidence. 2021 IL App (5th) 190066. Justice Wharton specially concurred (*id.* ¶¶ 80-101(Wharton, J., specially concurring)), and Justice Cates dissented (*id.* ¶¶ 102-32 (Cates, J., dissenting)).

¶ 2                                    BACKGROUND

¶ 3        The victim, Whittington, testified he was on disability, had served three years in the Marine Corps, and had a Class 2 felony driving-under-the-influence conviction in 2018. Whittington explained he had been friends with defendant and "Tina," who shared another apartment in the same building. Whittington would sometimes pay defendant and Tina to clean his apartment while he was home, and this occurred on the morning of July 29, 2018. Defendant and Tina finished cleaning and left the apartment around noon. Whittington left around 12:30 to 1 p.m. After locking and closing the door to the apartment, he went to a bar, where he drank beer with friends.

¶ 4        Whittington returned home around 6 to 6:30 p.m. and had trouble opening the door because its lock or "striker plate" was bent. Although his "key would turn" in the lock, "the door wouldn't open" until he pushed it hard with his knee. Becoming suspicious as he entered the apartment, Whittington then discovered loose change and 40 to 50 prescription hydrocodone pills were missing. He called the landlord and left a message saying he thought someone had broken into his apartment.

Whittington also called the police to make a report, and a police officer came to the apartment on July 29 and spoke with him. Michael McCrary, a patrol officer with the Carbondale Police Department, testified he was dispatched to Whittington's apartment on July 29, 2018, at 7 p.m. McCrary spoke with Whittington and inspected the doorknob and latch, which was "bent and was causing *** a problem to open the front door." Whittington stated items were missing including hydrocodone pills. Whittington seemed "kind of confused" because "someone had been in his house and taken his stuff." McCrary did not think Whittington seemed intoxicated. Whittington had no suspects to offer that day and at that point was not interested in pressing charges. Based on that, McCrary gave him his card and asked Whittington to call if he found anything else.

¶ 5 Over the next day or so, Whittington realized jewelry was also missing, including pieces from his deceased mother, and a window in the apartment was broken. He called the police again to tell them about the missing jewelry and that the window was "pushed in *** off the tracks" and its screen was also "bent up on the outside." He noted he informed the police there were cameras in the building. No one had permission to enter his apartment when he was not home, and he never found his missing jewelry.

¶ 6 On visiting Whittington's apartment again, McCrary noted Whittington then wanted to press charges. At that point, McCrary dusted for fingerprints around the area where the jewelry had been kept. McCrary learned from Whittington on July 29 there were cameras in the building, but the landlord was not there. And when McCrary talked to the landlord on July 30, "he said he would make a copy of the video, and I believe it was the day after that he called me again and said he had it ready." After watching the cell phone videos, McCrary identified defendant in the videos and in a search incident to arrest found $3000 cash and approximately 20 hydrocodone pills on defendant's person. McCrary clarified he talked to the landlord on July 30 and did not investigate more on July 29 because Whittington did not then want to press charges but later changed his mind.

¶ 7 Another patrol officer, Ashley Noto, testified she responded to a call at Whittington's apartment on July 31, 2018, relating to his window. Noto observed Whittington's window was "off of its hinges or *** its tracks" "[l]ike it had been tampered with, pushed in," and the screen was "busted."

¶ 8        The landlord, Schmidt, also testified. Schmidt owned the apartment building at 504 South Rawlings Street, knew both Whittington and defendant as tenants in the building, and had installed four cameras in the building earlier that year. Schmidt testified he was familiar with the operation of the video surveillance system and explained the cameras run all the time and record to a system in his office. Footage is saved for 48 hours, after which it is "automatically deleted *** unless you save it."

¶ 9        Schmidt testified he received a voicemail message from Whittington stating some items had been taken from his apartment during a certain time period that day. Schmidt talked to Whittington, who indicated the police "wanted to know if the surveillance system worked and if we had video." Schmidt and his wife went and reviewed the surveillance footage for the time period Whittington provided—both during and "some before that" time.

¶ 10       Schmidt noted they then "recorded it onto [Schmidt's] wife's cellphone" and "she forwarded that to my phone. *** [W]e have a technical guy in my office *** that helps with things like that *** and he downloaded it onto a disc." The trial court admitted the cell phone video clips into evidence, noting defense counsel's previous objections.

¶ 11       Schmidt explained how he and his wife chose the sections of the original footage to record as follows:

"We thought those were the most important or pertinent things that were observed on the videotape and [otherwise] my wife and I *** would have had to hold that cellphone up to the monitor for, you know, 20 some minutes to record nothing happening in the hallway. It was just empty."

Schmidt stated they copied what they found to be relevant to the break-in of Whittington's apartment.

¶ 12       As the first cell phone video clip played in court, Schmidt identified defendant in the video as walking up to and standing in Whittington's doorway for a few moments before walking away. Then, as the second cell phone video clip played in court, Schmidt identified defendant "coming out of Michael Whittington's apartment and turning left down the hallway." At the same time, a woman Schmidt

did not know came around the corner into the hallway, but she did not enter or exit Whittington's apartment. Schmidt stated he never saw defendant enter Whittington's apartment on the video clips. Schmidt stated that, in the second video clip, "I see what I believe is [defendant] exiting Mr. Whittington's apartment." He then stated he was certain it was Whittington's apartment defendant exited in the second video and not the empty apartment next door. Schmidt clarified he was also certain it was defendant exiting the apartment in the second video clip.

¶ 13    Schmidt acknowledged on cross-examination that he observed the 20-minute period between the two cell phone video clips on the original footage but did not provide a copy of that footage to the police. Schmidt admitted he tried and failed to copy it directly to a flash drive, "[s]o that's why we used the phone." They did not ask anyone else for help copying the footage.

¶ 14    In closing arguments, the State stressed the cell phone video clips, noting they showed defendant "was clearly inside Mr. Whittington's home *** without Mr. Whittington's authority." The defense highlighted the missing portions of video that were not provided, asserting the "State's whole case rests on these 20 seconds of video that they're trying to tell you what it shows." Defense counsel went on, stating:

>    "Out of 48 hours of video, the only thing the State can show you is two 20 second clips. We don't have anything else to show. The Defense can't show any other clips because we don't have it from them. That's all we've got was two 20 second clips.
>
>    You don't have the period before they say [defendant] was down there in the hall. You don't have the period in between the two times, which is about 1:45 and about 2:10. What happened in between those times? You don't have the period after. Who else is going up and down the hall? Who else is in that building? What else is going on? We don't know because they didn't give it to us."

¶ 15    In rebuttal argument, the State asserted the evidence clearly showed defendant "tried to get in through the front" but, when that didn't work, he broke into the apartment through the window and exited through the front door.

¶ 16        While deliberating, the jury sent out a note asking to see the cell phone video clips again, and they were replayed in open court. The jury then found defendant guilty of residential burglary.

¶ 17        Defendant filed a motion for new trial or judgment of acquittal notwithstanding the verdict, challenging the admission of the cell phone video clips. The trial court denied the motion and, following a sentencing hearing, sentenced defendant to 6½ years in prison.

¶ 18        On appeal, defendant argued the trial court erred by admitting the cell phone video clips under either Rule 1003 or 1004; alternatively, defendant argued, admission should have been barred under the common-law version of the best evidence rule, which defendant argued still applied. 2021 IL App (5th) 190066, ¶¶ 49, 53. The State argued the videos were properly admitted where the foundation was sufficient under this court's opinion in *People v. Taylor*, 2011 IL 110067. 2021 IL App (5th) 190066, ¶ 50. In response to the State's argument, defendant distinguished *Taylor* from this case and maintained his arguments related to the best evidence rule. *Id.* ¶ 52. The Fifth District affirmed in a three-way split opinion.

¶ 19        The lead opinion initially bypassed the issue of admission under Rule 1003 and concluded the videos were admissible under Rule 1004. *Id.* ¶ 55. However, the lead opinion ultimately went on to "reject the contention that the admission of the iPhone clips was an error based on inaccuracy or unfairness." *Id.* ¶ 61. Furthermore, Justice Vaughan determined the common-law best evidence rule, as discussed in *Electric Supply Corp. v. Osher*, 105 Ill. App. 3d 46, 48 (1982), no longer applies following Illinois's codification of the Illinois Rules of Evidence in 2011. 2021 IL App (5th) 190066, ¶ 53. As to whether defendant forfeited his argument challenging the foundation for admitting the cell phone video clips under *Taylor*, the lead opinion noted defendant failed to raise the issue in his opening brief. According to the lead opinion, although the State did address *Taylor* in its brief, defendant's reply brief was not responsive to the State pursuant to Illinois Supreme Court Rule 341(j) (eff. Oct. 1, 2020). 2021 IL App (5th) 190066, ¶ 52. Justice Vaughan went on to note he would have agreed with the special concurrence on the *Taylor* analysis, had he reached the issue. *Id.*

¶ 20        In an opinion specially concurring in the judgment, Justice Wharton agreed with the trial court's decision to admit the cell phone video clips but on other grounds.

*Id.* ¶ 81 (Wharton, J., specially concurring). The special concurrence concluded defendant did not forfeit his argument challenging the foundation for the cell phone video clips, but it then determined the totality of the evidence supported admission of the video clips under *Taylor*. *Id.* ¶¶ 81-99. Justice Wharton, in the alternative, agreed with the lead opinion on the best evidence rule and further concluded the video clips were admissible under Rule 1003. *Id.* ¶¶ 100-01.

¶ 21    Finally, in a dissenting opinion, Justice Cates addressed what she determined to be "two critical issues" here: (1) "whether there was an adequate foundation for the admission of the two, 20-second video clips under the 'silent witness' theory" of *Taylor* and (2) "whether, under the Illinois Rules of Evidence, the admission of the video clips was unfairly prejudicial to the defendant." *Id.* ¶ 120 (Cates, J., dissenting). The dissent would have reached the merits of the first issue and would have resolved both issues in favor of defendant. *Id.* ¶¶ 120-21. On the second issue, Justice Cates agreed the cell phone video clips were each a "duplicate" under Rule 1001. However, she would have concluded their admission was unfair to defendant under Rule 1003. *Id.* ¶¶ 131-32.

¶ 22    We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).

¶ 23                                   ANALYSIS

¶ 24    Defendant appeals, arguing (1) the trial court erred in admitting the cell phone video clips where they were inadmissible pursuant to Rule 1003 or 1004 or were inadmissible under the common-law best evidence rule or (2) defendant did not forfeit his argument the cell phone video clips lacked an adequate foundation for admissibility and this court should remand and direct the appellate court to address his challenge to the video clips' foundation.

¶ 25    A trial court's decision whether to admit evidence is reviewed for an abuse of discretion. *People v. King*, 2020 IL 123926, ¶ 35; *Taylor*, 2011 IL 110067, ¶ 27. "An abuse of discretion occurs only where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *People v. Rivera*, 2013 IL 112467, ¶ 37. When considering the interpretation of the Illinois Rules of Evidence, we employ the *de novo* standard of review. *People*

*v. Deroo*, 2022 IL 126120, ¶ 19.

¶ 26                                    Illinois Rules of Evidence

¶ 27        Defendant initially argues the cell phone video clips are inadmissible under both the duplicate exception contained within Rule 1003 and the other-evidence exception contained within Rule 1004. Multiple provisions of the Illinois Rules of Evidence are relevant to our analysis. Rule 1001 ("Definitions") defines the terms "[w]ritings and [r]ecordings" to include "photographing"—while defining "[p]hotographs" in turn to include "video tapes, motion pictures and similar or other products or processes which produce recorded images." Ill. R. Evid. 1001(1), (2) (eff. Jan. 1, 2011). A cell phone video, like those at issue, therefore qualifies as a "writing or recording."

¶ 28        Rule 1001(3) then defines an "original" of "a writing or recording" as the following:

"An 'original' of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. An 'original' of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.' " Ill. R. Evid. 1001(3) (eff. Jan. 1, 2011).

¶ 29        In contrast to the definition of an "original," Rule 1001(4) defines a "duplicate" as follows:

"A 'duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, *or by means of photography*, including enlargements and miniatures, or by mechanical or *electronic re-recording*, or by chemical reproduction, or by other equivalent techniques *which accurately reproduces the original*." (Emphases added.) Ill. R. Evid. 1001(4) (eff. Jan. 1, 2011).

¶ 30        A cell phone video, like those at issue, could therefore qualify as a "duplicate" of any original footage it recorded as "a counterpart produced *** by means of photography *** or electronic re-recording"—so long as it "accurately reproduces the original."

¶ 31    Rule 1003 ("Admissibility of Duplicates") provides: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Ill. R. Evid. 1003 (eff. Jan. 1, 2011). Notably, no issue is raised here under Rule 1003(1) as to authenticity.

¶ 32    And finally, Rule 1004 ("Admissibility of Other Evidence of Contents"), part (1) allows the admission of alternative types of evidence of the contents of an original that was lost or destroyed, as follows:

> "The original is not required and other evidence of the contents of a writing, recording, or photograph is admissible if—
>
> (1) Originals Lost or Destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith[.]" Ill. R. Evid. 1004(1) (eff. Jan. 1, 2011).

¶ 33    Here, the parties agree the cell phone video clips constitute "writings and recordings" (as defined under Rule 1001(1)-(2)) that did not qualify as "originals" (as defined under Rule 1001(3)).

¶ 34    They dispute the trial court's admission of the cell phone video clips, first as to (1) whether the video clips were "duplicates" as defined under Rule 1001(4) and, if so, (2) whether the video clips were admissible under Rule 1003(2), based on whether "in the circumstances it w[as] unfair to admit the duplicate in lieu of the original."

¶ 35    The parties also contest the trial court's admission of the cell phone video clips in the alternative under Rule 1004. Defendant asserts that, if this court agrees the video clips were inadmissible under Rule 1003, it would be improper to then consider admissibility under Rule 1004—but defendant further asserts, in the alternative, the video clips were inadmissible under Rule 1004 based on bad faith. The State asserts the cell phone video clips were admissible under either Rule 1003, Rule 1004, or both.

¶ 36                           Admissibility of the Cell Phone
                              Video Clips Under Rule 1003

¶ 37        We first address the Rule 1003 arguments. Defendant initially argues the cell phone video clips were not "duplicates" that could be admitted under Rule 1003 because they did not " 'accurately reproduce the original' footage," under the language of Rule 1001(4). But defendant does not argue the video clips were altered or inauthentic, or otherwise unfaithfully depicted the content they did include. Rather, defendant's contention is that the cell phone video clips' short duration, together capturing only two small portions of the then-existing surveillance footage, did not provide enough context to "accurately" relay *the entirety* of the original surveillance footage.

¶ 38        Defendant asserts this is so because the video clips "omitted possibly the most relevant time period to the commission of this offense"—the period between the videos—"as well as any other potentially relevant time period throughout the day," when witnesses' (and other potential suspects') comings and goings to the apartment could have been established and contrasted with presented testimony.

¶ 39        The parties agree there is no Illinois caselaw on point. Defendant looks instead to interpretations of the "functionally identical" Federal Rule of Evidence 1003 as persuasive authority. See Fed. Rs. Evid. 1001(e), 1003. Defendant cites *United States v. Condry*, 574 F. Supp. 979, 981-82 (N.D. Okla. 2021), where the police used a cell phone camera to re-record a video of the defendant's cell phone playing original videos and the district court held the re-recorded video qualified as a "duplicate" in part because it contained "the entirety of the videos" and could be authenticated by witnesses. Defendant asserts that here, by contrast, the cell phone videos were "incomplete and unfair" and the appellate court ruling "encourages the admission of unreliable evidence."

¶ 40        The State contests defendant's argument that a "duplicate" needs to be a complete copy of the original, asserting "there is no such requirement that a duplicate *fully* reproduce the original," so long as the reproduction of a portion of the original is done "accurately." (Emphasis in original.) The State also points to persuasive authority in jurisdictions with substantially similar rules of evidence to Illinois, citing *United States v. Sinclair*, 74 F.3d 753, 760 (7th Cir. 1996) (upholding the admission of partial copies of documents as "duplicates" of the originals), and

*State v. Jones*, 2015-Ohio-4694, ¶¶ 18-20, 32-37 (App. 8th Dist.) (upholding the admission as duplicates of copies of sequences reformatted from portions of original surveillance footage, first "deemed relevant" and selected by the apartment manager, where the content produced had not been altered).

¶ 41    The State asserts defendant conflates the unfairness question under Rule 1003(2) with the question of whether the cell phone video clips constituted duplicates under Rule 1001(4). The State argues that no case cited by defendant supports his position that a partial recording cannot be considered a duplicate, noting instead that the cited cases "simply hold that a complete duplicate *does*, a position that is unchallenged here." Defendant notes that the duplicates at issue in the cases cited by the State, while containing only portions of the originals, still showed all the material events at issue in those cases.

¶ 42    After considering the plain language of Rules 1001(4) and 1003, and the specific circumstances here, we are persuaded the cell phone video clips constitute duplicates under Rule 1001(4), as required for admissibility under Rule 1003. Interpretating Rule 1001(4) to require any duplicate to include the entirety of an original does not follow the plain language of the rule, and we decline to adopt such a view. Absent from Rule 1001(4) is any language requiring a duplication of the original in its entirety in order to constitute a duplicate. In the absence of such language, reading such a requirement into the rule would be improper. We note defendant fails to provide any precedent—persuasive or otherwise—directly supporting his contention that a recording including only a portion of an original cannot be admitted as a duplicate of that portion under Rule 1003.

¶ 43    We conclude defendant's concern that the cell phone video clips contain only a portion of the original surveillance footage speaks to the fairness analysis the trial court must conduct under Rule 1003(2), to which we now turn.

¶ 44    As noted, under Rule 1003(2), a duplicate should not be admitted if "in the circumstances it would be unfair to admit the duplicate in lieu of the original." Defendant asserts the trial court erred in admitting the cell phone video clips because their admission was unfair to the defense under this provision. Defendant notes "the full footage" would have "depicted all of the entries and exits by [defendant] and Whittington (and anyone else) on the day of the incident," whereas showing only the cell phone video clips "invited the jury to draw negative

inferences that the entire video could have foreclosed." Defendant believes "questionable circumstances like what occurred here" should bar admission under Rule 1003 for unfairness, citing the dissent below and two civil cases where duplicates were admitted when the opposing party did not contest the duplicates as inaccurate.

¶ 45 The State argues the trial court was correct to reject defendant's argument on unfairness, noting there is no "non-speculative basis on which to conclude that the footage that [the landlord] Schmidt did not record contained relevant evidence or to impugn Schmidt's credibility in recording the footage." The State asserts the court did not abuse its discretion and any unfairness was dispelled by the court allowing the defense "ample latitude" to cross-examine the witnesses and "exploit" the gaps between the video clips at trial.

¶ 46 Defendant disagrees with the State that "the potential unfairness" of the cell phone video clips was offset by the defense being allowed extra leeway in cross-examination and closing arguments, asserting that "the information on the [video] clips was so limited that it left the defense without the means to fully formulate its own theory." Defendant also points to an advisory committee note on Federal Rule of Evidence 1003, which states: "Other reasons for requiring the original may be present when only a part of the original is reproduced and the remainder is needed for cross-examination or may disclose matters qualifying the part offered or otherwise useful to the opposing party." Fed. R. Evid. 1003, Advisory Committee Notes. Defendant believes this "perfectly describes the circumstances here."

¶ 47 We are mindful that we must review the trial court's decision to admit the cell phone video clips pursuant to the highly deferential abuse-of-discretion standard of review. An abuse of discretion occurs when the trial court's decision can be characterized as "arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *Rivera*, 2013 IL 112467, ¶ 37. We begin by pointing out that, here, there is no question as to the accuracy of the recording. While it is undisputed that the entire original recording was not duplicated, no claim has been raised that the short video clips in any way altered the original footage.

¶ 48 Here, the two short cell phone video clips showed (1) defendant approach and stand close outside Whittington's doorway for a few moments before walking away and then—after a gap of approximately 20 minutes—(2) defendant leave

Whittington's apartment through the door while carrying a white plastic bag. Whittington testified hydrocodone pills and jewelry were missing when he returned later that day and defendant did not have authority to be in his apartment during that time. Testimony also established the apartment window was knocked off its track and the screen was bent. And the landlord, Schmidt, a neutral observer, testified the hallway was "just empty" on the original surveillance footage captured between the two cell phone video clips. Defense counsel was able to question Schmidt on cross-examination and re-cross at length on all these topics, emphasizing his lack of "competence" to make a complete copy of the original footage. Finally, defense counsel made strong arguments to the jury encouraging the jury to accept defense counsel's view of the significance of the missing portions of the surveillance footage and against whom that should be held.

¶ 49    Admitting the duplicates was fair where the jury heard both sides and had ample information from defendant's point of view to consider when deciding what weight to give the video clips. Thus, on the record before us, we cannot say the trial court's conclusion was "arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *Id.* We therefore uphold the trial court's admission of the cell phone video clips.

¶ 50    We note defendant's argument that this holding could lead to bad behavior by parties attempting to selectively edit duplicates to gain advantage at trial. But a trial court may determine, on different facts, that it would be unfair to admit a duplicate that selectively contains only a portion of an original. Any evidence of gamesmanship by the offering party could be considered in that analysis. Our ruling here in no way constrains a trial court's discretion on that issue in a future case.

¶ 51                          Admissibility of the Cell Phone
                          Video Clips Under Rule 1004

¶ 52    Given our resolution of the issues under Rule 1003, we find it unnecessary to address the parties' alternative arguments under Rule 1004.

¶ 53                  Applicability of the Common-Law Best Evidence Rule

¶ 54        Finally, defendant asserts the best evidence rule as understood in the common law is still applicable in Illinois, citing *Osher*, 105 Ill. App. 3d at 48-49, and argues the common-law rule served as an independent basis to bar admission of the cell phone video clips. Defendant asserts that, under *Osher*, the State was required to show diligence in seeking the original surveillance footage under the common-law best evidence rule.

¶ 55        In support, defendant cites two unpublished First District cases that continued to cite older rulings like *Osher* after the enactment of the Illinois Rules of Evidence, *In re Marriage of Greenberg*, 2021 IL App (1st) 210325-U, ¶¶ 16, 27 (discussing the requirements of Rule 1004 and a need to show "diligence" under the older common-law best evidence rule while reversing the circuit court's denial of admission of secondary evidence of a written arbitration contract based on lack of fact finding), and *People v. Grafton*, 2017 IL App (1st) 142566-U, ¶¶ 78-80 (upholding admission of a video, citing older caselaw while noting a police officer showed "diligence" in recording cell phone video of surveillance footage in attempt to preserve it). Defendant also relies on one federal case that still cited the best evidence rule as understood in the common law, following the enactment of the Federal Rules of Evidence, *United States v. Chavez*, 976 F.3d 1178 (10th Cir. 2020).

¶ 56        The State argues, in line with the appellate court lead opinion, that the codification of the Illinois Rules of Evidence clearly abrogated the common-law best evidence rule in existence at the time. The State cites the general committee commentary on the Illinois Rules of Evidence, which explains the Illinois Rules of Evidence were adopted to codify "the current law of evidence in Illinois." Ill. R. Evid. Committee Commentary 1 (adopted Jan. 1, 2011). The committee commentary on Rule 1004 further notes it is "no longer necessary to show that reasonable efforts were employed beyond available judicial process or procedure to obtain an original possessed by a third party." Ill. R. Evid. 1004, Committee Commentary (adopted Jan. 11, 2011).

¶ 57        We agree with the State and the lead opinion below that the Illinois Rules of Evidence codified—and therefore abrogated—the common-law rules of evidence in Illinois. We therefore reject defendant's reliance on *Osher* and the then-current

understanding of the best evidence rule as it existed in the common law. We reaffirm that the Illinois Rules of Evidence control on these issues.

¶ 58                    Defendant's Alternative Request for
                       Remand to Address Foundation

¶ 59        We end by addressing defendant's alternative request for remand. The appellate court split on the question of whether defendant had forfeited an issue of the videos' foundation under this court's decision in *Taylor*, 2011 IL 110067—where defendant did not contest the issue in his opening brief but the State addressed an issue relating to *Taylor* and defendant responded to it. We decline defendant's request for remand and conclude the issue is not properly before this court for two reasons.

¶ 60        First, while defendant did raise in the trial court a freestanding challenge to the cell phone video clips' foundation under *Taylor*, apart from his arguments on the best evidence rule, he chose not to advance that issue in the appellate court. 2021 IL App (5th) 190066, ¶¶ 49 n.2, 52. In an argument it has since abandoned, the State argued the video clips' sufficient foundation under *Taylor* essentially negated defendant's arguments under the best evidence rule. *Id.* ¶ 50. In responding to the State's argument, defendant distinguished *Taylor*—noting that, because the recording at issue there qualified as an original, the best evidence rule was not implicated—and reiterated his arguments under the best evidence rule. *Id.* ¶ 52; *id.* ¶ 121 (Cates, J., dissenting). The lead appellate court opinion initially noted this same point. *Id.* ¶ 51 (lead opinion) (stating that because "the videotape in *Taylor* was an original as defined by Rule 1001(3)," "[t]he best evidence rule and a potential duplicate copy was not at issue").

¶ 61        As noted, the Fifth District then split on whether defendant forfeited his argument on foundation under *Taylor*—and the special concurrence and dissent split again on the outcome each would have reached on the merits of the issue. But defendant was simply arguing in the appellate court that the State's position was wrong: discussion of the issue of foundation under *Taylor* did nothing to resolve the separate question of admissibility under the best evidence rule. See 31 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 8004 (Apr. 2022 Update) ("Even assuming the proper foundation has been established, a duplicate

is not admissible under Rule 1003 if either of two exceptions to the admissibility of duplicates applies."). Forfeiture was not at issue because none of this served to revive a freestanding argument on foundation under *Taylor*.

¶ 62 Second, defendant still does not seek reversal on the basis of *Taylor*, instead characterizing the issue as "not outcome determinative here." We agree. Defendant urges this court to nonetheless analyze the factors under *Taylor* in support of his argument on the best evidence rule, under Rule 1003, but we conclude it does not alter our analysis on that issue above. We decline to remand the case to the appellate court to clarify this issue, as defendant asks in the alternative, because it is unnecessary for the reasons discussed.

¶ 63                                    CONCLUSION

¶ 64 For the foregoing reasons, we affirm the judgment of the appellate court, which affirmed defendant's conviction and sentence.

¶ 65 Affirmed.