**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250056-U

Order filed March 9, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0056 Circuit No. 24-CF-127 |
| | ) | |
| MARQUAN IVY, | ) ) | Honorable Kathy Bradshaw-Elliott |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Peterson and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The court erred when it admitted evidence of other crimes through a recorded interview. However, the error was harmless. The statute permitting minors to testify via closed circuit television is not facially unconstitutional.

¶ 2    The defendant, Marquan Ivy, appeals his convictions of two counts of predatory criminal sexual assault of a child and one count of aggravated criminal sexual abuse. He argues (1) the court improperly admitted evidence of other crimes by allowing the State to publish to the jury allegations of crimes other than the ones with which he was charged through a recorded interview,

and (2) the statute permitting the victim to testify via closed circuit television is facially unconstitutional.

¶ 3                                    I. BACKGROUND

¶ 4        The defendant was charged by indictment with four counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2022)) and one count of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2022)). The State alleged that on May 19, 2023, the defendant placed his penis in the vagina of C.D.P. It further alleged that in June of 2023, the defendant again placed his penis in the vagina of C.D.P., placed his penis in the mouth of C.D.P., and touched the breast of C.D.P. for the purposes of sexual arousal or gratification. The defendant denied these allegations.

¶ 5        Prior to trial, the State filed three motions *in limine*. The first was a motion requesting to admit statements made by C.D.P. to her mother and an interview recorded at the Child Advocacy Center (CAC) pursuant to a statutory exception to the hearsay rule. 725 ILCS 5/115-10 (West 2022). The second was a motion to allow the victim to testify by closed-circuit television (CCTV) pursuant to 725 ILCS 5/106B-5 (West 2022). The third was a motion requesting permission to present evidence of "other sexual acts by the defendant against the victim" through the recorded CAC interview. The court held hearings on each motion and granted each motion in turn.

¶ 6        At trial, the victim's mother, Sarah Whitaker, testified that she and her daughter, C.D.P., moved into an apartment in 2022. At that time, C.D.P. was nine years old, and C.D.P.'s younger brother also lived with them. About one week later, C.D.P.'s older brother, the defendant, moved in with them. The defendant was eighteen at the time. He initially slept in the living room, but eventually he moved into C.D.P.'s room because there were two beds in that room. The

defendant's girlfriend also lived in the apartment and shared the same bedroom. The defendant moved out of the apartment in early February 2024.

¶ 7 Whitaker stated that on February 20, 2024, she was picking up food with C.D.P., and she did not seem like herself. When Whitaker inquired, C.D.P. stated that she was being sexually assaulted. Whitaker took her to the hospital and arranged for C.D.P. to be interviewed by the CAC.

¶ 8 The State called C.D.P. to testify. She testified via CCTV in a room next to the court room, and she was joined in that room by the judge, defense counsel, the prosecutor, and a court reporter. The jury and the defendant remained outside the room while C.D.P. testified. She stated that she shared a bedroom with the defendant and his girlfriend. On May 19, 2023, she was at home with her younger brother and the defendant, and the defendant came into C.D.P.'s room, took off C.D.P.'s clothes, and started touching her breasts. She told him to stop, but he continued. He then put his penis in her vagina. She testified that she was afraid.

¶ 9 C.D.P. also stated that in June of 2023, the defendant started touching her breasts in the bathroom. Again, she told him to stop, but he continued. Again, he removed her clothes and put his penis in her vagina. She stated that she was scared and nervous.

¶ 10 C.D.P. was interviewed at the Child Advocacy Center by Ericka Erickson. Erickson testified that she interviewed C.D.P. on February 22, 2024, and the interview was recorded. When the State announced its intention to publish the recorded interview, the defense filed a written motion requesting to limit the publication of the video to statements concerning the events of May 19, 2023, and June of 2023, and specifically to exclude portions of the recording that described other instances of sexual abuse. The motion focused on the prejudicial nature of other crimes evidence and stated that "[t]he purpose of a video brought in as a hearsay exception pursuant to 725 ILCS 5/115-1[0] is to assist in corroborating the claim made by the victim. In our case, there

3

is nothing to corroborate as C.D.P. only testified to two instances [of abuse]." The court denied the motion, and the CAC interview was admitted and published in its entirety.

¶ 11    During the recorded interview, C.D.P. told Erickson that she had been sexually abused by the defendant beginning in 2020. She stated that the defendant would take her clothes off, squeeze her "boobs" and "butt" with open hands, massage her "hoo-ha," and place his "p-word" in her "hoo-ha." She used anatomical diagrams to clarify that the words "hoo-ha" and "p-word" referred to female and male genitalia, respectively. The recorded interview contained a description of the events of May 19, 2023, wherein C.D.P. told Erickson that the defendant touched her breasts with his hands and placed his "p-word" in her "hoo-ha." She stated that the defendant "molested" her "repeatedly" until he moved out of the apartment with his girlfriend. He continued to abuse her "every month," including in June of 2023, which was the first time the defendant made her suck his "p-word." She told Erickson that the last time the defendant abused her was on January 7 or January 8, 2024, and that he had placed his "p-word" in her "hoo-ha," and touched her "boobs" with his hands until "white stuff" came out of his "p-word."

¶ 12    The defendant testified. He denied sexually abusing C.D.P., and he stated that while he lived with his mother and C.D.P. there was always another adult at home with the younger children. At least two other adult men lived at that apartment at different times, the defendant's girlfriend was also present at the apartment while the defendant was living there in 2023 and 2024, and a fourth person lived in the apartment in early May of 2023. The defendant testified he was never at home alone with C.D.P., and he specifically denied undressing her, grabbing her breasts, grabbing her buttocks, placing his penis in her mouth, and placing his penis in her vagina.

¶ 13    The jury found the defendant guilty of two counts of predatory criminal sexual assault for placing his penis in C.D.P.'s vagina on May 19, 2023, and placing his penis in C.D.P.'s mouth in

4

June of 2023, and one count of criminal sexual abuse for knowingly touching the breast of C.D.P. for sexual gratification in June of 2023. The defendant was sentenced to a total of 29 years' imprisonment on January 30, 2025, and the defendant filed a notice of appeal the same day.

¶ 14                                    II. ANALYSIS

¶ 15        The defendant challenges (1) the court's decision to allow the State to present evidence of other crimes through a recorded statement pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2024)), and (2) the constitutionality of the statute permitting victims to testify using CCTV. We review the circuit court's decision to admit evidence of prior misconduct for an abuse of the court's discretion. *People v. Smith*, 2022 IL 127946, ¶ 25. We review the constitutionality of statutes *de novo*. *People v. Aguilar*, 2013 IL 112116, ¶ 15.

¶ 16                               A. Other Crimes Evidence

¶ 17        The defendant's first contention is that the court erred when it permitted the State to introduce evidence of other crimes using the victim's recorded CAC interview. The State contends the defendant forfeited this claim by failing to object to the admission of the challenged statements on hearsay grounds. However, the State concedes the defendant filed a written objection through a motion *in limine*, which stated, in relevant part, that "[t]he purpose of a video brought in as a hearsay exception pursuant to 725 ILCS 5/115-1[0] is to assist in corroborating the claim made by the victim. In our case, there is nothing to corroborate as C.D.P. only testified to two instances [of abuse]." While the majority of the defendant's written objection focused on the prejudicial nature of the evidence, we find the issue was properly preserved when the defendant objected to the admission of such statements prior to trial and brought concerns about the same statements to the court's attention during the trial through a written motion. While "[w]e require parties to preserve

issues or claims for appeal; we do not require them to limit their arguments here to the same arguments that were made below." *Brunton v. Kruger*, 2015 IL 117663, ¶ 76. We will therefore address the merits of the defendant's argument.

¶ 18    Hearsay is generally inadmissible. However, section 115-10 of the Code provides that "testimony of an out of court statement made by the victim describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim" shall be admitted as an exception to the hearsay rule if three criteria are met. 725 ILCS 5/115-10(a)(2) (West 2024). Those criteria are: (1) the court finds that the time, content, and circumstances of the statement provide sufficient safeguards of reliability, (2) the victim either testifies at the proceeding or is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement, and (3) if the victim is under the age of 13, the statement was made before the victim attained 13 years of age or within 3 months after the commission of the offense, whichever occurs later. 725 ILCS 5/115-10(b)(1), (b)(2), (b)(3) (West 2024).

¶ 19    Evidence of other crimes is inadmissible to prove the defendant's propensity to commit a crime. *People v. Bean*, 137 Ill. 2d 65, 107 (1990). However, section 115-7.3 of the Code (725 ILCS 5/115-7.3 (West 2024)) offers an exception to the common law prohibition on the use of other crimes evidence. *People v. Ward*, 2011 IL 108690, ¶ 25. When a defendant is tried for one of several enumerated sex offenses, section 115-7.3(b) of the Code allows the State to introduce evidence that the defendant also committed another of the specified offenses as evidence of the defendant's propensity to commit specified offenses. *People v. Boyd*, 366 Ill. App. 3d 84, 90 (2006). To qualify as admissible, the uncharged sex offense must be (1) otherwise admissible under the rules of evidence, (2) of greater probative value than the associated prejudice,

considering factors such as proximity in time and factual similarity to the charged offense, and (3) disclosed at a reasonable time prior to trial. *Ward*, 2011 IL 108690, ¶ 25. Our supreme court has cautioned trial judges to be cautious in the admission of other-crimes evidence for the purposes of demonstrating propensity, advising courts to engage in a "meaningful assessment of the probative value versus the prejudicial impact of the evidence." *People v. Donoho*, 204 Ill. 2d 159, 186 (2003).

¶ 20　　　　The defendant observes that although the court in this case deemed the evidence of other crimes admissible under section 115-7.3 of the Code, the evidence offered was not "otherwise admissible under the rules of evidence" because the State provided the evidence solely through a CAC interview, which was admitted pursuant to section 115-10 of the Code. Although section 115-10 is a hearsay exception, it refers specifically to acts which are "the subject of a prosecution." 725 ILCS 5/115-10 (West 2024). Citing *People v. Anderson*, 225 Ill. App. 3d 636, 650-51 (1992), the defendant contends it was error to admit statements describing uncharged offenses (offenses that were not the subject of prosecution) through section 115-10.

¶ 21　　　　In *Anderson*, the defendant was charged with abusing his adopted son, J.A., twice, in April of 1990. At trial, J.A. testified. The State also introduced statements made by J.A. to three different investigators. Through those witnesses, the State elicited statements regarding numerous incidents of repeated abuse, including that the victim had been abused almost every Friday night for years. Reviewing their testimony, we concluded it was error for the court to have admitted their statements because "[t]he plain language of the statute limits the exception to complaints of, or details about, sexual acts which are the subject of a prosecution." *Id*. at 651.

¶ 22　　　　The State acknowledges *Anderson* but contends that other cases have engaged in a "less restrictive" reading of section 115-10. The State cites *People v. Boling*, 2014 IL App (4th) 120634. In *Boling*, the defendant was charged with acts of sexual penetration involving his girlfriend's

7

daughter, K.A. The State alleged that between August 2010 and May 2011, the defendant repeatedly placed (1) his penis in her sex organ, (2) his penis in her anus, and (3) his mouth on her sex organ. The State moved to admit statements made by K.A. to her mother and others. Following a hearing, the court admitted those statements, which also included allegations of other crimes that took place between 2010 and 2011. K.A. alleged the defendant had kissed her breasts and neck, made threats against her dog and guinea pigs, and appeared to have abused her cousin during a game of hide-and-seek. The appellate court sanctioned the use of those statements because it deemed those facts relevant to explain the context within which the alleged charge occurred.

¶ 23    We do not find *Anderson* and *Boling* incompatible. In *Boling*, the State alleged abuse spanning approximately two years, and the evidence of other crimes introduced in *Boling* was contemporaneous with the charged offenses. Thus, the court was correct to consider the other crimes evidence details "pertaining to any act which is an element of an offense which is the subject of a prosecution." 725 ILCS 5/115-10(a)(2) (West 2024). Conversely, the defendant in *Anderson* was charged with committing abuse within a much more limited time frame. Specifically, the State charged the defendant with committing abuse in April of 1990. The other crimes described in *Anderson* predated the charged offenses by at least two years. Thus, we observe that when the State charges specific instances of abuse within a particular time frame, it is error to introduce hearsay statements through section 115-10 of the Code about other, uncharged incidents that are not contemporaneous with the charged offenses. See, *e.g.*, *People v. Kinnett*, 287, Ill. App. 3d 709, 716-17 (1997) (the court excluded hearsay statements about abuse that occurred involving the same defendant but on other dates and at different locations).

¶ 24    Here, the State alleged two specific instances of abuse: one that occurred on May 19, 2023, and one that occurred in June of 2023. The facts in this case most closely mirror those in *Anderson*.

Section 115-10 permits the introduction of evidence of offenses that are the subject of prosecution, or details thereof. The uncharged offenses in this case occurred in 2020 and 2024 and were not contemporaneous with the charged offenses. Thus, they were not, as the statute requires, "the subject of prosecution." See 725 ILCS 5/115-10(a)(2) (West 2024). It was therefore error for the court to admit those hearsay statements under section 115-10 of the Code.

¶ 25        Nonetheless, the State contends that any error in admitting these statements is subject to harmless error analysis. "A nonconstitutional evidentiary error is harmless if there is no reasonable probability that the jury would have acquitted the defendant absent the error." *People v. Forrest*, 2015 IL App (4th) 130621, ¶ 57. After thoroughly reviewing the evidence, we find that any error in introducing uncharged offenses through the victim's CAC interview was harmless beyond a reasonable doubt. The testimony of C.D.P. was clear, detailed, and consistent with the statements she made to her mother and to Erickson at the CAC.

¶ 26        Moreover, "the danger of undue prejudice in a section 115-7.3 case is 'less pronounced' than in other common-law other-crimes cases" because in those cases the legislature's enactment of section 115-7.3 cuts against the general rule that other-crimes evidence is *per se* unduly prejudicial. *People v. Adams*, 2023 IL App (2d) 220061, ¶ 68. Indeed, evidence of other offenses would have been admissible in this case had the victim herself testified to the acts. See *Anderson*, 225 Ill. App. 3d at 647-48. The court's decision to admit the evidence under section 115-10 was error; nonetheless, given the strength of the State's case and the general admissibility of other sex offenses in cases listed under section 115-7.3, the error was harmless beyond a reasonable doubt.

¶ 27                                    B. Constitutionality of Section 106B-5

¶ 28        We must note at the outset that the defendant's framing of this issue on appeal is slightly confusing. In the title of his brief (and at certain points during oral argument), he describes his

challenge to the use of CCTV as error on the part of the circuit court *in this case*. That is, he appears to be claiming there was a constitutional error "as applied" to the facts of his case. Yet the arguments contained in his brief exclusively address the facial unconstitutionality of the statute and do not address the circuit court's actions in this case. Facial and as-applied constitutional challenges are not interchangeable. *People v. Thomson*, 2015 IL 118151, ¶ 36. As-applied challenges require showing the statute violates the constitution "as it applies to the facts and circumstances of the challenging party. In contrast, a facial challenge requires showing that the statute is unconstitutional under any set of facts, *i.e.*, the specific facts related to the challenging party are irrelevant." *Id*. When asked at oral argument to clarify what type of challenge the defendant was raising, counsel for the defendant insisted the appeal was exclusively a facial constitutional challenge to the statute and not an as-applied challenge. Therefore, we address only the facial constitutionality of the statute and pass no judgment on whether it was unconstitutionally applied in this case.

¶ 29    Statutes are presumed to be constitutional, and the party challenging the constitutionality of a statute "bears the burden of rebutting this presumption and clearly establishing a constitutional violation." *People v. Funches*, 212 Ill. 2d 334, 339 (2004). A statute is only facially unconstitutional if there are no circumstances under which the statute may be constitutionally applied. *United States v. Rahimi*, 602 U.S. 680, 693 (2024). To prevail, the State must only establish that the statute is constitutional in some of its applications. *Id*. For this reason, a facial constitutional challenge is the "most difficult challenge to mount successfully." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Additionally, statutes carry a strong presumption of constitutionality, and courts are bound to interpret them so as to uphold their constitutionality if reasonably possible. *Hill v. Cowan*, 202 Ill. 2d 151, 157 (2002).

¶ 30    The defendant cites two reasons we should hold section 106B-5 unconstitutional. The first is that it conflicts with the interpretation of the confrontation clause described in *Crawford v. Washington*, 541 U.S. 36 (2004), and the second is that it contains an "unconstitutional legislative presumption," requiring the court to presume that a victim under the age of 13 "shall testify outside the courtroom and the child's testimony shall be shown in the courtroom by means of a closed circuit television." 725 ILCS 5/106B-5(f-5) (West 2024). We address each argument in turn.

¶ 31    In *Crawford*, the United States Supreme Court held that when the government seeks to introduce an out-of-court statement at trial, the "reliability" test articulated in *Ohio v. Roberts*, 448 U.S. 56, 66 (1980) and *Idaho v. Wright*, 497 U.S. 805, 816 (1990) is not a suitable substitute for a defendant's right under the sixth amendment to confront and cross-examine a witness. *Crawford v. Washington*, 541 U.S. at 68. There, the prosecution introduced a tape-recorded statement made by the defendant's wife to police officers, and the trial court permitted its admission despite the fact that the defendant's wife did not testify because it found the statement to bore "adequate indicia of reliability." *Id.* at 36, quoting *Roberts*, 488 U.S. at 66.

¶ 32    *Crawford*, authored by Justice Scalia, stands for the proposition that a judicial determination of reliability is not a suitable substitute for an accused's right to confront witnesses. The defendant argues it also implicitly altered the holding in *Maryland v. Craig*, 497 U.S. 836 (1990). In *Craig*, the Court held that under certain circumstances a defendant's right to confrontation may be satisfied despite the absence of a face-to-face cross examination of the witness. *Craig*, 497 U.S. at 855. Justice Scalia dissented in *Craig*, arguing that policy interests should not take precedent over the rights of defendants to face their accusers. *Craig*, 497 U.S. at 861 (Scalia, J., dissenting). Despite this, *Crawford* makes no mention of *Craig*, and *Craig* has been

11

favorably cited since *Crawford*'s publication by the Illinois Supreme Court. See *People v. Cuadrado*, 214 Ill. 2d 79, 89 (2005).

¶ 33     Other reviewing courts have commented on the apparent "tension" between *Craig* and *Crawford*. See *People v. Pope*, 2020 IL App (4th) 180773, ¶ 45. Nonetheless, the two cases deal with different aspects of the confrontation clause. See *People v. Franklin*, 2023 IL App (1st) 200996, ¶¶ 80-81. *Crawford* concerns the constitutionality of out-of-court statements made by witnesses who do not testify, whereas the central question in *Craig* is whether and how the confrontation clause may be satisfied in the absence of face-to-face confrontation between the defendant and a witness. Thus, *Craig* is implicated in cases where a witness testifies, but face-to-face confrontation is curtailed, altered, or denied, and *Crawford* is implicated in cases where a statement is introduced, but a witness does not testify. *Craig* contemplates, as does section 106B-5, situations in which the confrontation clause's requirements may be met even in the absence of face-to-face confrontation. Because *Crawford* neither discusses nor alters the holding in *Craig*, *Craig* remains binding on this court, and we are required to follow it. *Id.* ¶ 82. We therefore decline to find section 106B-5 unconstitutional on the basis that it conflicts with *Crawford*.

¶ 34     The defendant next argues that section 106B-5 contains an impermissible presumption. Section 106B-5(f-5) creates a "rebuttable presumption" that a child under 13 years of age "shall testify outside the courtroom and the child's testimony shall be shown in the courtroom by means of a [CCTV]." 725 ILCS 5/106B-5(f-5) (West 2024). The presumption can only be overcome if the defendant is able to prove "by clear and convincing evidence that the child victim will not suffer severe emotional distress." *Id.* The defendant notes the Supreme Court's decision in *Coy v. Iowa*, 487 U.S. 1012 (1988), wherein the Court found that the placement of a screen between the defendant and a child victim violated the defendant's right to confront the witness. *Coy*, 487 U.S.

12

at 1021. The Court in *Coy* observed that eliminating face-to-face confrontation requires the court to make individualized findings that a particular witness requires special protection. *Id*. The defendant argues that section 106B-5(f-5) is "similar to the presumption in [the Iowa statute], which *Coy* rejected."

¶ 35 However, the defendant misapprehends the significance of *Coy*. The Court in *Coy* did not "reject" the Iowa statute at issue. Instead, the Court found a constitutional violation based on how the statute was applied to a particular defendant, *i.e.*, the court found an as-applied constitutional violation. Specifically, the court found that the defendant's right to face-to-face confrontation was denied without the court having made any individualized findings. *Coy*, 487 U.S. at 1021. The facial challenge brought by the defendant requires the defendant to establish that section 106B-5 is unconstitutional in *all* applications. *Rahimi*, 602 U.S. at 693.

¶ 36 To the extent *Coy* has any bearing on the question of whether section 106B-5 is facially unconstitutional, it suggests that courts must make individualized findings to justify the denial of traditional face-to-face confrontation between defendants and witnesses. See *Coy*, 487 U.S. at 1021. Although subsection (f-5) requires the court to presume that a victim under the age of 13 requires the use of a CCTV to testify, that presumption, by the statute's own terms, is rebuttable. Because the statute permits the court to make the required individualized findings, it may be constitutionally applied and does not offend *Coy* or any other precedent. We therefore find that section 106B-5 is not facially unconstitutional.

¶ 37                                      III. CONCLUSION

¶ 38 For the reasons stated, we affirm the judgment of the circuit court of Kankakee County.

¶ 39 Affirmed.

13